**TEXTRON ELECTRONICS, INC.,**
**Plaintiff,**

v.

**UNHOLTZ–DICKIE CORPORATION,**
**John A. Dickie, Karl Unholtz, Donald**
**S. McCluskey and Gerald K. Reen, Defendants.**

**Civ. No. 8241.**

United States District Court
D. Connecticut.

April 14, 1961.

C. Blake Townsend, Byerly, Townsend, Watson & Churchill, Carroll G. Harper, New York City, Donald F. Keefe, Gumbart, Corbin, Tyler & Cooper, New Haven, Conn., for plaintiff.

John D. Fassett, Wiggin & Dana, New Haven, Conn., for defendants.

ANDERSON, Chief Judge.

This action was brought by the plaintiff in the federal court on a claim of diversity of citizenship of the parties. By their motion to dismiss, the defendants challenge the existence of such diversity. Except for the ground claimed, there does not appear to be present any other basis for federal jurisdiction. The plaintiff alleges that it is a Delaware corporation with its principal place of business at Providence in the State of Rhode Island. The defendants assert that the principal place of business of the plaintiff is in the District of Connecticut. The question of whether or not this court has jurisdiction, therefore, turns upon what finding this court makes as to the actual principal place of business of the plaintiff. The 1958 amendment to Title 28 U.S.C. § 1332(c) provides: "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the state where it has its principal place of business." The present action was filed in this court on February 26, 1960 and it is the jurisdictional facts existing upon that date which must furnish the basis for the court's conclusion as to the plaintiff's principal place of business.

A hearing was held on this jurisdictional question alone, and a variety of

testimonial and documentary evidence was introduced. The general counsel of Textron Electronics, Inc., a vice president of Textron, Inc., who was formerly "president" or manager of the MB Electronics Division of Textron Electronics, Inc., and the divisional comptroller of MB Electronics Division testified; among the documents introduced were the plaintiff's annual and quarterly reports, registration statements for stock issues, and certain schedules showing the comparative figures for sales, number of employees, payroll, floor space, and asset values, both in Connecticut and in other states. These schedules covered the period from January through November, 1960, but with one exception as to the number of employees, the comparative percentages were approximately the same for the period preceding February 26, 1960, the relevant date for the determination of the plaintiff's "principal place of business."

On the basis of this evidence, the court finds that on February 26, 1960 the plaintiff had a manufacturing plant, known as MB Electronics Division, at New Haven, Connecticut, which manufactured electronic test equipment for missiles and aircraft. It also had the Globe Electronics Division at Council Bluffs, Iowa, which manufactured amateur radio equipment. It also had a wholly owned subsidiary, GC Electronics, Inc. of Providence, Rhode Island which, in turn, owned and operated three plants, one at Rockford, Illinois, one at Los Angeles, California, both of which manufactured electronic components, and the third, the Schafer Custom Engineering Division, at Burbank, California.

During 1960 about 43% of the plaintiff's sales orders were filled from divisions or plants outside of Connecticut and about 57% from the MB Division in Connecticut. The value of the inventories was so divided that approximately 44% was located in Connecticut and approximately 56% outside of Connecticut. The fixed assets were so distributed that slightly less than 50% were in Connecticut and slightly over 50% outside of Connecticut. Plant floor space was so distributed that about 51% was located in Connecticut and 49% outside. About 54% of the employees were located in Connecticut and 46% outside; and the payroll was divided so that 64% was paid in Connecticut and 36% outside. Although the payroll disbursements were actually made in Connecticut in connection with MB Division, funds for each payroll were deposited in a local bank through arrangements made in the central office at Providence, Rhode Island. Raw materials purchases were paid for in a similar fashion because MB Electronics Division had no bank account of its own.

In addition, each division was autonomous and essentially unrelated to any other. None had any funds of its own or power to borrow money. Each had a divisional "president" or manager who oversaw the day to day operations of his division, including hiring and firing of employees earning less than $15,000 per annum.

The offices of the president, the chairman of the board, the secretary, treasurer, comptroller, and general counsel were all at the central office at Textron Electronics, Inc. in Providence, Rhode Island. The board of directors, which also functioned as an executive and financial committee, met once a month either in Providence, Boston or New York; it did not meet at any time in Connecticut. The board of directors also functioned as an operations policy committee for major matters of policy. Lesser policy decisions were made by the officers in Providence; all of the vice-presidents and other officers, not heretofore mentioned, had their offices there; all governmental tax returns and other reporting, emanated from there and all capital expenditures in excess of $2,500 and charitable contributions in excess of $100 made by branches and divisions were required to be approved by the central office in Providence. The administration of the profit sharing and stock option plans, the purchasing of items, particularly for maintenance and repair, com-

mon to more than one division, and the making of contracts for insurance of all types for all divisions were also performed by the central office in Providence. The hiring of employees with salaries in excess of $15,000 had to be approved by the board of directors. In general, all of the principal, policy, financial, tax, accounting, internal auditing, insurance and other administrative functions were performed by and on behalf of Textron Electronics, Inc. for all of its plants and divisions at the offices in Providence, Rhode Island.

On February 26, 1960 the plaintiff was in the midst of an acquisition program as set forth in its prospectus of September 2, 1959. At the time of the prospectus the plaintiff was at the stage of searching for companies, engaged in electronics and related fields, for purchase. The over-all purpose and plan was to develop the plaintiff into an electronics company with a wide range of products and services. By February 26, 1960 negotiations were in process for the acquisition of the Allegany Instrument Company of Cumberland, Maryland, the Electronic Research Company of Kansas City, Missouri, and the Spectrolab of North Hollywood, California; and the assets of these companies were actually acquired May 31, May 27 and October 17, 1960, respectively. On April 9, 1960 a foreign subsidiary, Textron Electronics International Limited, Nassau and B.W.I., was organized and on May 15, 1960, there was also organized another foreign subsidiary, MB International, of Denmark. While these plants and subsidiaries which were added between May and October, 1960, cannot be considered as actual operating divisions of the plaintiff on the crucial date of February 26, 1960, it is perfectly clear that it was a part of the over-all plan and purpose of the business of the plaintiff on that date to acquire additional plants and subsidiaries, all of which happened to be located outside of Connecticut. Although a certain amount of hindsight is involved, the actual subsequent purchase of these plants and subsidiaries may be considered to give substance to the seriousness and scope of the plans and the actual negotiations as they existed on February 26, 1960. The planning, negotiating, financing and control over this program of expansion stemmed from the home offices of the plaintiff at Providence, Rhode Island. No control over any of the operations or functions of the offices, divisions or subsidiaries of the plaintiff, which were located outside of Connecticut, emanated from MB Electronics Division at New Haven.

From these facts the principal place of business of Textron Electronics, Inc. must be determined. Although the statute, itself, offers no guide in deciding what and where the "principal place of business" is, the Senate Report accompanying the 1958 amendment to 28 U.S.C. § 1332(c), indicates that the meaning of "principal place of business" is to be found in the precedents interpreting the same phrase in § 2 of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(1). But the question being one of fact, prior cases are of limited assistance. There is also a division in the authorities as to the standard to be applied in making this determination. One might be called the "nerve center" theory and the other the "operating assets" theory. As Professor Moore said, "there is some conflict in the cases as to whether the principal place of business is located at the general executive offices where the business affairs of the corporation are managed or in the district of the factories, mills or mines of the corporation." Collier on Bankruptcy, Vol. 1, § 2.19, ¶ 2, p. 192 (14th ed. 1956). Cases in support of each of these theories are cited in footnotes 8 and 9.

The Second Circuit cases under the Bankruptcy Act have appeared to favor the former approach and this has been applied by the lower courts of the Circuit in cases under § 1332(c). The leading district court case is the decision by Judge Weinfeld in Scot Typewriter Co. v. Underwood Corp., D.C.S.D.N.Y.1959, 170 F.Supp. 862. In that case Judge Weinfeld said,

"Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective. The test applied by our Court of Appeals, is that place where the corporation has an 'office from which its business was directed and controlled' —the place where 'all of its business was under the supreme direction and control of its officers.'" At page 865.

See also Wear-Ever Aluminum, Inc. v. Sipos, D.C.S.D.N.Y.1960, 184 F.Supp. 364; and Hughes v. United Engineers & Constructors, Inc., D.C.S.D.N.Y.1959, 178 F.Supp. 895.

Although the Third Circuit, the only Court of Appeals which has ruled on § 1332(c), appears to eschew the words "nerve center" and prefers to use the words "center of corporate activity", Kelly v. United States Steel Corp., 3 Cir., 1960, 284 F.2d 850, 854, the distinction is not of compelling significance as applied to the facts of the present case.

The defendants argue that the activities of subsidiaries cannot properly be considered as a part of the business carried on outside of the State of Connecticut. But it is certainly a part of the business of the plaintiff, as the parent corporation, to vote the shares of its wholly owned subsidiary and in so doing it must have a determining voice in establishing and overseeing its vital operations and functions. It is fair to suppose that this is done by plaintiff's officers and directors in Providence, Boston or New York. Certainly it is not done in Connecticut. Moreover, in this particular case the testimony showed that GC Electronics, Inc. was treated by the plaintiff as one of its divisions. Inclusion of a subsidiary's business as a part of the business of the parent corporation for the purpose of locating the par-

ent's "principal place of business" is no innovation as far as the Bankruptcy Act is concerned. See Title 11 U.S.C.A. § 11, sub. a(1); In re San Antonio Land & Irrigation Co., D.C.S.D.N.Y.1916, 228 F. 984, 986–990, A. Hand, J.

The line of cases cited by the defendants, including Cannon Mfg. Co. v. Cudahy Co., 1925, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, does not call for a contrary conclusion, because it involves the question whether in personam jurisdiction over a defendant parent corporation can be acquired by service of process on a subsidiary. This is a matter quite different from weighing the activities of a corporation in two or more states for the purpose of finding out where its principal place of business is for the purpose of subject matter jurisdiction.

There is no question in this case that all of the parties are subject to service of process both in the state courts of Connecticut and in the federal court for this district. It does not concern a contest over geographically separated jurisdictions. The cases concerning service of process on a subsidiary to give in personam jurisdiction over the parent also involve a possible difference in the substantive law which will apply to the case. Here, however, as this is a diversity action, Connecticut substantive law will apply in any event.

■ The subordinate facts point to the conclusion that the principal place of business of the plaintiff on February 26, 1960 was Providence, Rhode Island. This is consistent with the purpose of the 1958 amendment to § 1332(c) which was to deny federal jurisdiction to essentially local businesses with foreign charters. Senate Report No. 1830, 85th Congress, 2nd Session (1958), U. S. Code Congressional & Administrative News, pp. 3099, 3101, 3102. While this amendment was under consideration by Congress, the suggestion was made that diversity jurisdiction might be reduced by making a corporation a citizen of the state from which more than 50% of its gross income was derived. See U. S. Code Congres-

**460**

sional & Administrative News at page 3120. This proposal, which is allied to the defendants' arguments, was rejected.

While much has been said about the places of the plaintiff's activities, it is not primarily necessary to show precisely where the principal place of business was, so long as it was outside of Connecticut. Looked at from this viewpoint, it is readily apparent that the plaintiff has sustained its burden of proof. The court concludes that the plaintiff's principal place of business was not in Connecticut, that complete diversity of citizenship exists and the motion to dismiss is denied.