**K. S. CORP., Plaintiff,**

**v.**

**CHEMSTRAND CORPORATION and
Fabrex Corp., Defendants.**

United States District Court
S. D. New York.
Sept. 29, 1961.

Royall, Koegel & Rogers, New York City, for plaintiff. Frederick W. P. Lorenzen and Laura C. Hruska, New York City, of counsel.

Shearman & Sterling, New York City, for defendant Chemstrand Corp. John A. Wilson and M. Van Voorhies, New York City, of counsel.

Hahn, Hessen, Margolis & Ryan, New York City, for defendant Fabrex Corp. James C. Slaughter, and Melvin Beinart, New York City, of counsel.

METZNER, District Judge.

Defendant Chemstrand Corporation moves to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b) (1, 6) and 12(h) (2), 28 U.S.C.

Plaintiff instituted a suit consisting of three causes of action, the first and third being asserted against Chemstrand Corporation alone and the second being asserted against both Chemstrand and Fabrex Corp. jointly. The first cause of action charges Chemstrand with a violation of the Robinson-Patman Act (15

U.S.C.A. § 13(d, e)) for alleged discrimination against plaintiff and in favor of Fabrex in sales promotions and advertising allowances, and services and inventory financing. The second cause of action charges the defendants with a violation of Sections 1 and 2 of the Sherman Act (15 U.S.C.A. §§ 1 and 2), alleging the existence of a conspiracy to increase defendant Fabrex's position in the sportswear, dress and coat market and concurrently to eliminate plaintiff as a substantial competitor. The third cause of action consists of a claim for breach of contract against Chemstrand.

Chemstrand has moved, pursuant to Rule 12(b) (6), to dismiss the first cause of action on the grounds that neither plaintiff nor Fabrex was a "purchaser" or "customer" of Chemstrand within the meaning of the Robinson-Patman Act and that plaintiff's and Fabrex's fabrics were not "commodities of like grade and quality" within the meaning of the act.

Plaintiff and Fabrex are "converters" who are engaged in acquiring "greige goods" or unfinished textiles, manufactured to their specifications, from mills, converting these greige goods into finished textiles and selling them to manufacturers of "consumer goods." Chemstrand is a manufacturer of an acrylic fiber which is sold under the trademarks *Acrilan* and *A-Acrilan* to mills. This fiber has been made known to the public in general and to members of the trade specifically by extensive advertising and promotional activity carried on by Chemstand.

Plaintiff alleges that Chemstrand solicits converters in order to induce them to use Acrilan fiber in their greige goods. In this solicitation Chemstrand discusses and agrees upon the price of the fiber to be charged the mill. In addition, Chemstrand contracts directly with some converters by way of standard contract forms and license agreements to furnish them advertising and sales promotion, including the right of the converter and its customers to utilize the Chemstrand trademarks. The said license agreements provide for quality control by Chemstrand over the finished goods of the converter.

Plaintiff alleges that after extensive negotiation Chemstrand represented that it would furnish advertising and other such promotional help to plaintiff and its customers in exchange for plaintiff's agreement to order from the mills greige goods made in part from Acrilan and furnished to the mill by Chemstrand at agreed upon prices. After plaintiff placed its order for greige goods containing Acrilin fibers, Chemstrand refused to make available to plaintiff the promotion and advertising which it had promised. Plaintiff further alleges that Chemstrand agreed to furnish and did in fact furnish Fabrex the type of promotion and advertising which plaintiff had negotiated for as well as "services and inventory financing."

█ Contrary to plaintiff's contention, the term "customer" used in Section 2(d) of the Robinson-Patman Act is to be given the same meaning as "purchaser" in Sections 2(a) and 2(e) of the act, in order to harmoniously effectuate the purpose of the parallel provisions. Atty. Gen.Nat'l Comm.Antitrust Rep. 189 (1955).

█ Privity of contract between the manufacturer (Chemstrand) and a converter (plaintiff) is not a necessary condition for the converter to be considered a "purchaser" within the meaning of the Robinson-Patman Act. An indirect purchaser may come within Section 2 when the manufacturer deals directly with him in promoting the sale of his product and exercises control over the terms upon which he buys. Union News Co., Trade Reg.Rep. (F.T.C. Complaints, Orders, Stipulations, 1960–61) ¶29,335 (1961); Champion Spark Plug Co., 50 F.T.C. 30 (1953) (manufacturer conducted negotiations and set terms and conditions of sale); Dentists' Supply Co. of New York, 37 F.T.C. 345 (1943) (manufacturer solicited customers and suggested retail prices); Luxor, Ltd., 31 F.T.C. 658 (1940) (same); Kraft-Phenix Cheese Corp., 25 F.T.C. 537 (1937). Cf. Eliza-

beth Arden, Inc. v. F. T. C., 2 Cir., 1946, 156 F.2d 132.

In Union News Co., supra, sufficient control by the manufacturer was held to exist because the prices charged by the wholesaler and the retailer were fixed in negotiations between the manufacturer and the retailer, the manufacturer bore the cost of unsold magazines and specified the dates on which new copies were sold and old ones returned. In Kraft-Phenix Cheese Corp., supra, the manufacturer solicited orders from the retailers, issued suggested price lists to the wholesalers, which prices were usually adhered to, and exchanged directly with the retailer fresh cheese for stale cheese.

When the manufacturer lacks sufficient contact with the indirect purchaser and/or sufficient control over the terms upon which he buys, the latter will not qualify as a "purchaser" within the meaning of the act. Klein v. Lionel Corp., 3 Cir., 1956, 237 F.2d 13 (mere existence of fair-trade agreement insufficient to establish control); Baim & Blank, Inc. v. Philco Corp., D.C.E.D.N.Y. 1957, 148 F.Supp. 541 (finding that wholesaler set terms and conditions of sale). Cf. 1960 Antitrust Law Symposium, Trade Reg.Rep. No. 153, p. 107 (June 1960). The ultimate determination as to whether sufficient control exists to make the plaintiff a purchaser within the meaning of the act will depend to a large extent on the proof adduced as to the number and quality of the contacts between Chemstrand, the plaintiff and Fabrex. A reading of the above cited cases indicates the vague line that separates a covered indirect purchaser and one who is not. It would appear that each case must be decided on its own facts. Sufficient has been alleged in this complaint to permit the plaintiff to ultimately prove its cause of action. Adverse determination cannot be made on this motion to dismiss. The facts may become clearer after the discovery deposition procedures have been exhausted.

Similarly, the question as to whether the fabrics bought by plaintiff and Fa-

brex were "commodities of like grade and quality" cannot be decided on this motion. Whether the acrylic fiber was what the converters were purchasing or whether the greige goods were the object of the purchase must await further development through proof.

The motion to dismiss the first cause of action is denied.

Chemstrand has moved, pursuant to Rule 12(b) (6), to dismiss the second claim upon the ground that it fails to allege any acts constituting a violation by the defendant of Sections 1 and 2 of the Sherman Act, and further that it fails to allege that public injury resulted from the alleged unlawful acts committed by the defendant.

The claim alleges that Fabrex was and is a major supplier of cloth used in the manufacture of women's and children's sportswear, dresses and coats and that Chemstrand's trademark, by virtue of extensive advertising and consequent consumer acceptance, was a desirable adjunct to the sale of such cloth. It is then alleged that Chemstrand and Fabrex entered into a conspiracy to increase the position of Fabrex in the market of selling cloth containing this acrylic fiber and to prevent plaintiff from becoming a substantial competitor therein and to eliminate plaintiff from the market. In furtherance of this conspiracy several acts of a discriminatory nature are alleged, including the giving by Chemstrand to Fabrex of certain advertising and promotional allowances, and permission to use Chemstrand's trademark, all on the understanding that they would not be furnished plaintiff. In addition, it is alleged that the defendants, pursuant to the conspiracy, induced manufacturers to cease doing business with the plaintiff and secured business secrets from the plaintiff, which information has been used for the benefit of Fabrex to the detriment of plaintiff.

The complaint is sufficient to defeat defendant's motion. The question of whether the alleged conspiracy amounts to an unreasonable restraint of trade or monopolizes any part of the trade or

commerce within the meaning of the Sherman Act must await a full disclosure of the facts. Defendant's attack on the complaint overlooks the fact that the overt acts alleged are part of an overall conspiracy between the defendants. At this point such discriminatory practices, if proved, might well sustain a recovery for the plaintiff. United States v. Paramount Pictures, Inc., 1948, 334 U.S. 131, 159–161, 68 S.Ct. 915, 92 L.Ed. 1260. A complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 1957, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80; 2 Moore, Fed.Practice ¶12.08, 2245 (2 Ed.).

■ Chemstrand has placed great reliance upon the failure of the plaintiff to allege "public injury" in this second claim. Violations of Section 1 of the Sherman Act may flow from "per se illegality" or conduct violative of the "rule of reason." Standard Oil Co. of New Jersey v. United States, 1911, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619. The alleged violations in this complaint would have to be judged by the rule of reason.

■ In Klor's, Inc. v. Broadway-Hale Stores, Inc. et al., 1959, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741, the Supreme Court held that it was unnecessary to allege and prove "public injury" in the "per se" type of violation. Recently the court has indicated that it is unnecessary to make such allegation in any claim for relief under Section 1 of the act. Radiant Burners, Inc. v. Peoples Gas Light & Coke Co. et al., 1961, 364 U.S. 656, 81 S. Ct. 365, 5 L.Ed.2d 358. Thus, under any alleged violation of Section 1 of the Sherman Act, the plaintiff no longer need show that the public has been deprived of goods or that it had to pay a higher price for them or accept an inferior substitute. The result is that the small business man is protected to the same extent as a larger one. See also, Antitrust Conspiracies—Doctrine of Public

Injury, Federal Bar News, 145 (June 1961).

Chemstrand moves to dismiss the third cause of action, pursuant to Rules 12(b) (1), 12(b) (6) and 12(h) (2), on the ground that the court does not have jurisdiction over the subject matter because of the absence of diversity of citizenship. The third cause of action is based upon an alleged breach of contract.

Section 1332(c), 28 U.S.C., provides that for the purposes of diversity jurisdiction

"a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

Plaintiff is a New York corporation and asserts that Chemstrand, incorporated in Delaware, has its principal place of business in Alabama. Chemstrand contends that its principal place of business is in New York. The question as to where a corporation has its principal place of business is not always an easy one to decide because of the variable factors presented in each situation. The Report of the Senate Committee on the Judiciary which accompanied the proposal that became Section 1332(c) suggests that the Bankruptcy Act (11 U.S.C.A. § 11) provides criteria to guide the courts in determining this question. 2 U.S.Code Cong. & Adm. News 1958, pp. 3099–3102. The cases decided under the Bankruptcy Act indicate that the issue is resolved by determining the location of the corporate personnel who direct the daily operations of the business, such as the executive and administrative vice presidents, the house counsel, the personnel department and the purchasing department. In re Hudson River Nav. Corp., 2 Cir., 1932, 59 F.2d 971; Continental Coal Corp. v. Roszelle Bros., 6 Cir., 1917, 242 F. 243; Burdick v. Dillon, 1 Cir., 1906, 144 F. 737. The cases decided under Section 1332(c) have followed the bankruptcy decisions. Kelly v. United States Steel Corp., 3 Cir., 1960, 284 F.2d 850; Wear-Ever Aluminum, Inc. v. Sipos, D.C.S.D.N.Y.1960, 184 F.Supp. 364; Hughes v. United En-

gineers & Constructors, Inc., D.C.S.D. N.Y.1959, 178 F.Supp. 895; Scot Typewriter Co. v. Underwood Corp., D.C.S.D. N.Y.1959, 170 F.Supp. 862.

■ It is settled that the person alleging jurisdiction in the federal courts has the burden of proving the facts upon which such jurisdiction rests. Thomson v. Gaskill, 1942, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951; Compania Distribuidora Woodward Y. Dickerson, Inc. v. Cristina Copper Mines, Inc., D.C.S.D. N.Y.1953, 114 F.Supp. 454. Applying the above rules to the facts in the instant case, plaintiff has not sustained its burden of proof that Chemstrand's principal place of business is in Alabama.

■ Chemstrand has plants located in Alabama, Florida and South Carolina. The only executive officer of Chemstrand found outside of New York is a vice president and assistant secretary located in Alabama. The entire policy-making function and personnel are located in New York and consist of the president, the vice presidents in charge of manufacturing, engineering and development, finance, industrial development and the overseas division, and the treasurer, secretary, comptroller, assistant treasurer, assistant comptroller and assistant secretary. The board of directors holds five of its six meetings during the year in New York City. The various documents submitted by the plaintiff to prove that Chemstrand's principal place of business is in Alabama do not negative the fact that Chemstrand's principal place of business for the purpose of Section 1332(c) is in New York.

■ Chemstrand's objection can be overcome only on the theory of pendent jurisdiction. The theory of recovery on the third claim for breach of contract is not based upon the same facts upon which theories of recovery could be predicated under the Robinson-Patman Act or the Sherman Act. The third claim alleges a simple contract and the breach thereof on or about October 20, 1959. Recovery under the first and second claims alleged in the complaint may be had upon facts completely foreign and irrelevant to those necessary to predicate recovery on the third claim. Hurn v. Oursler, 1953, 289 U.S. 238, 239, 53 S.Ct. 586, 77 L.Ed. 1148. The third claim must be dismissed.

So ordered.