**Samuel LEVE, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

United States District Court
S. D. New York.

Oct. 15, 1965.

Joseph J. Einhorn, New York City, for plaintiff.

Edward B. Wallace, New York City, for defendant; Joseph G. Wackerman, John J. Higgins, New York City, of counsel.

BONSAL, District Judge.

Plaintiff, Samuel Leve, commenced an action in the New York Supreme Court, New York County, against defendant, General Motors Corporation (General Motors), for alleged wrongful appropriation and use by General Motors of a plan for its exhibit at the New York World's Fair alleged to have been prepared by the plaintiff and submitted to General Motors at the latter's request. Defendant General Motors removed the action to this court on the ground of diversity of citizenship.

Plaintiff now moves to remand the action to the New York Supreme Court, asserting that no diversity of citizenship exists. Plaintiff is a citizen of New York, and defendant General Motors is a Delaware corporation concededly con-

ducting business activities in the State of New York. The sole issue raised by plaintiff's motion is whether under 28 U.S.C. § 1332(c)[1] General Motors has its principal place of business in the State of New York. In his moving papers plaintiff alleges facts on which he bases his conclusion that General Motors' principal place of business is located in New York, and in its answering papers General Motors sets forth facts on which it bases its conclusion that its principal place of business is located in Michigan.

For the purposes of § 1332 the determination of a corporation's principal place of business is one of fact. Scot Typewriter Co. v. Underwood Corp., 170 F.Supp. 862 (S.D.N.Y.1959). See Colorado Interstate Gas Co. v. Federal Power Commission, 142 F.2d 943 (10th Cir. 1944). The burden of proof rests upon General Motors, which claims Federal jurisdiction, so that if the court is in doubt, the motion for remand should be granted. Puritan Fashions Corp. v. Courtaulds Ltd., 221 F.Supp. 690 (S.D. N.Y.1963); K. S. Corp. v. Chemstrand Corp., 198 F.Supp. 310 (S.D.N.Y.1961); Hughes v. United Engineers & Constructors, Inc., 178 F.Supp. 895 (S.D.N.Y. 1959).

The facts presented on this motion are set forth in affidavits. Neither party has requested an evidentiary hearing, nor does the court find one necessary.

The facts as to General Motors' activities in New York may be summarized as follows:

The Board of Directors holds monthly meetings throughout the year, eleven of which are held in New York and the twelfth in Detroit, Michigan. The Board's Bonus and Salary Committee and Audit Committee, both made up of directors who are not employees, meet in New York. The Board's Finance Committee made up of ten directors, of which three are employee directors, meets in New York. The Chairman of the Board of Directors is a resident of New York, where he maintains an office and where he spends at least half of his time, the balance of his time being spent in Michigan. The Secretary of the corporation maintains an office in New York and in Michigan, and keeps duplicate records in New York and Michigan. The corporation transfers its stock at its New York office, and also maintains stock transfer agents in other states, including the state of Michigan. General Motors' listing in the Manhattan telephone directory lists "Executive Offices" at 1775 Broadway, in addition to listing various divisions of the company at other addresses in New York. While it was not mentioned either in the moving or answering papers, judicial notice can also be taken of recent publicity indicating that General Motors proposes to build a General Motors building on the site of the Savoy Plaza Hotel on Fifth Avenue, New York City.

The facts as to General Motors' activities in Michigan may be summarized as follows:

The Executive Committee of the Board of Directors, consisting of the Chairman of the Board and eight employee directors, meets in Michigan, and the eight employee directors are residents of Michigan. The Chairman of the Board spends half of his time in Michigan, and the Secretary maintains an office there. Nine policy groups which report to the Executive Committee meet in Michigan, each policy group being headed by a Vice President who is a resident of Mich-

---

1. § 1332 reads in part:
   "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
   (1) citizens of different States;
   *       *       *       *       *

   "(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: * * *."

igan.[2] The President and each of the four Executive Vice Presidents have their headquarters in Michigan and are residents of that state. The President is assisted by an administrative committee which meets in Michigan, of which committee the Chairman and 16 members reside in Michigan and two members reside in New York. (One member resides in Canada.) The Operations Staff divided into Marketing, Engineering, Research, Personnel, Styling, Manufacturing and Public Relations, the Automotive and Defense Divisions and Other Operating Divisions, and the Finance Staff, which are the responsibility of the President and the Executive Vice Presidents, all have their headquarters in Michigan. The Treasurer, Comptroller and General Counsel maintain their headquarters in Michigan.

General Motors is engaged in the manufacture, assembly and distribution of automotive and other products, sales of automotive products being approximately 89% of its total net sales for the five years ending December 31, 1964. It maintains plants located in some 19 states and employs an average of nearly half a million people. Of the automobiles assembled by General Motors in the United States (1965 Model year) approximately 35% were assembled in plants in Michigan compared with 5% in New York. Of the 124 plants which General Motors maintained in the United States, 41 were located in Michigan compared with 12 in New York. Approximately 48% of its plant floor space was located in Michigan compared to 6½% in New York. Approximately 44% of its employees were employed in Michigan as compared with 7% in New York. (Figures for 1964.)

In determining where a corporation maintains its principal place of business under § 1332(c), some courts have used the "nerve center" test, Scot Typewriter Co. v. Underwood Corp., supra, while others have looked to the location of its operating assets, Gilardi v. Atchison, Topeka and Santa Fe Ry., 189 F.Supp. 82 (N.D.Ill. 1960); Mattson v. Cuyuna Ore Co., 180 F.Supp. 743 (D.C.Minn. 1960); Potocni v. Asco Mining Co., 186 F.Supp. 912 (W.D.Pa. 1960); Hodges v. Georgia Kaolin Co., 207 F.Supp. 374 (M.D.Ga. 1962).

Perhaps the closest case to the one at bar is Kelly v. United States Steel Corp., 284 F.2d 850 (3d Cir. 1960) where the issue was whether United States Steel Co. had its principal place of business in New York or Pennsylvania. The court found that the Board of Directors, the Executive Committee and the Finance Committee all met in New York, and that the Chairman of the Board, the Secretary, Treasurer, Comptroller and General Counsel had their offices in New York. The President spent half his time in New York, and final decisions on corporate policy were made in New York. Nevertheless, the court found that the principal place of business of United States Steel was in Pennsylvania, pointing out that its business activities were centered in Pennsylvania and that it is business activities rather than the policy making which indicate the principal place of business. The court referred to the fact that 32.13% of the employees were in Pennsylvania, being 25 times as many as in New York and more than twice as many as in any other state, and that more than one-third of the tangible property of the corporation was in Pennsylvania against less than 1% in New York, and, finally, that about 35% of the corporation's productive capacity was in Pennsylvania against none in New York. The court concluded:

"It is true that Pennsylvania does not have the majority of the productive capacity of this corporation nor the majority of the employees of this corporation. It does have, however, more than any other state. These facts, added to what we have found to be the headquarters of day-to-day corporate activity and management,

**2.** These policy groups are: Canadian, General Engine, Household Appliance, Overseas, Engineering, Marketing, Personnel, Public Relations and Research.

add up to the irresistible conclusion that the principal place of business of this giant corporation is in Pennsylvania." (Kelly v. United States Steel Corp., supra at 854.)

The "nerve center" approach enunciated by Judge Weinfeld in Scot, supra, involved a corporation where the principal operating control as well as policy making and the holding of meetings of the Board of Directors were centered in New York. (See also Textron Electronics, Inc. v. Unholtz-Dickie Corp., 193 F.Supp. 456 (D.C.Conn. 1961).) However, where policy making and meetings of the Board of Directors take place in one state and the operating control is exercised in another, the courts have found the latter state to be the corporation's principal place of business. Kelly v. United States Steel Corp., supra; Herschel v. Eastern Airlines, Inc., 216 F.Supp. 347 (S.D.N.Y. 1963); Inland Rubber Corp. v. Triple A Tire Service, Inc., 220 F.Supp. 490 (S.D. N.Y. 1963). In K. S. Corp. v. Chemstrand Corp., supra, 198 F.Supp. at 314, the court resolved the issue of the corporation's principal place of business by "determining the location of the corporate personnel who direct the daily operations of the business, such as the executive and administrative vice presidents, the house counsel, the personnel department and the purchasing department."

■ On the facts here presented, there is no doubt that the operating control of General Motors is exercised in Michigan.[3] A corporation's principal place of business "is more likely to be the one where the actual physical operations are carried on and directed than the place where occasional high-level policy deci-

sions are made." (Moore and Weckstein, Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited, 77 Harv.L.Rev. 1426, 1445 (1964).)[4]

 Accordingly, the court finds that General Motors has met its burden of proof that its principal place of business is not located in New York, and while it is not necessary to the decision, the facts clearly show that its principal place of business is in Michigan. Consequently, diversity jurisdiction exists, and plaintiff's motion to remand the action to the New York Supreme Court must be denied.

It is so ordered.

---

3. It should be noted, moreover, that General Motors' largest concentration of production activity and personnel is located in Michigan.

4. The American Law Institute is engaged in a "Study of the Division of Jurisdiction Between State and Federal Courts." The Council of the Institute recently submitted to its members "Proposed Final Draft No. 1" which would provide a new Section 1302 to Title 28 excepting from diversity jurisdiction a corporation which has for a period of more than two years maintained a local establishment in a state in any action arising out of the activities of that local establishment. (American Law Institute, "Study of the Division of Jurisdiction Between State and Federal Courts," "Proposed Final Draft No. 1," April 19, 1965, pp. 11–13.) Under the facts here stated, if the statute were so amended, General Motors could not claim diversity jurisdiction.