**Linda R. CLINTON, Plaintiff,**

v.

**The BUDD COMPANY, a Foreign corporation, Defendant.**

**Civ. No. 81–74291.**

United States District Court, E. D. Michigan, S. D.

June 9, 1982.

Gerald D. Wahl, John P. Hergt, Donnelly & Associates, P.C., Detroit, Mich., for plaintiff.

Richard M. Tuyn, Terence V. Page, Clark, Hardy, Lewis, Pollard & Page, P.C., Birmingham, Mich., for defendant.

## OPINION AND ORDER

COHN, District Judge.

### I.

This is an employment discrimination case. Suit was started in the Circuit Court for Wayne County, Michigan, alleging a violation of Michigan's Elliott-Larsen Civil Rights Act, M.C.L.A. § 37.2101 *et seq.* Defendant, a Pennsylvania corporation, removed it to this court on the grounds of diversity asserting its principal place of business was in Pennsylvania, 28 U.S.C. §§ 1332 and 1446. Thereafter plaintiff moved to remand, the question now before the Court, alleging that defendant's principal place of business was in Michigan.

### II.

### A.

As part of the proofs on the question of where its principal place of business is located, defendant filed the affidavit of its corporate secretary displaying the following division of employees, assets and sales among Pennsylvania, Michigan and other states:

|  | Number of Employees | % of Employment Assets | % of Sales |
|---|---|---|---|
| Pennsylvania | 5,616 (50%) | 44 | 50 |
| Michigan | 2,970 (26%) | 24 | 23 |
| Other States | 2,750 (24%) | 32 | 27 |
| Total | 11,336 (100%) | 100 | 100 |

The affidavit states that "[i]t is the position of the Budd Company that its principal place of business is located in Pennsylvania."

After the affidavit was filed, the Court's attention was directed to an affidavit filed by defendant's corporate counsel in a 1981 case in this District which stated "The Budd Company is a corporation incorporated under the laws of the State of Pennsylvania, and has its principal place of business in Michigan." This affidavit stated that defendant's corporate offices are in Michigan, its board of directors meets in Michigan, corporate records and accounting activities are located in Michigan, and all policy decisions, general supervision and day-to-day control of corporate business takes place in Michigan. The affidavit concluded by stating:

> "8. Although The Budd Company has plants in many states, and in some foreign countries, the majority of its facilities, including its Corporate Headquarters, Detroit Plant, Clinton Plant, Plastics Division Headquarters, International Headquarters and its finance subsidiary, as well as other subsidiaries, Milford Fabricating Company and Place Machine Company, are located in Michigan."

### B.

To resolve the apparent differences in the two affidavits as well as to determine where defendant's "principal place of business" is located for purposes of 28 U.S.C. § 1332(c), the Court conducted an evidentiary hearing.

### III.

There is no real inconsistency between the facts set forth in the two affidavits, despite their differing conclusions as to defendant's principal place of business. The testimony at the evidentiary hearing from the two affiants substantially followed the factual matters stated in their respective affidavits.

Defendant operates in a decentralized manner. Local plant management is responsible for scheduling, hiring and firing of employees, purchases and some accounting. Each plant is a profit center. Each plant has considerable autonomy.

If defendant's domestic subsidiaries are removed from the percentages set forth above, the relationship among the States is as follows:

|  | Number of Employees | % of Employees Assets | % of Sales |
|---|---|---|---|
| Pennsylvania | 5,434 (56%) | 54 | 60 |
| Michigan | 2,353 (24%) | 19 | 16 |
| Other States | 1,855 (20%) | 27 | 24 |
| Total | 9,642 (100%) | 100 | 100 |

The evidentiary hearing disclosed that defendant has rather significant foreign subsidiaries in addition to its domestic subsidiaries.

If the above table is recast to reflect the number of employees divided among Pennsylvania, Michigan, other states and subsidiaries, both foreign and domestic, the figures are approximately as follows:

| [1] Pennsylvania | 5,434 | (40%) |
|---|---|---|
| Michigan | 2,353 | (17%) |
| Other States | 1,855 | (13.5%) |
| Subsidiaries | 4,044 [1] | (29.5%) |
| Total | 13,686 | (100%) |

In this format the distribution of Assets Employed and of Sales correspond roughly to the distribution of employees.

From the corporate counsel's affidavit and testimony and a brochure (Plaintiff's Exhibit 2, "THE BUDD COMPANY—INFORMATION 1982"),[2] it is clear that Michigan is the nerve center and the heart of this multi-national corporation and that if the subsidiaries are "attributed" to Michigan (see Part IV. B., *infra*), it is the dominant state in regard to defendant's operations as well as its management.

## IV.

### A.

28 U.S.C. § 1332(c) provides that for purposes of determining diversity of citizenship "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Early case authority interpreting this proviso tended to be split between a "nerve center" and a "place of operations" test. For example, in *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y.1959), the court found that the defendant corporation's principal place of business was in New York where its "nerve center", its executive, administrative, sales and policy-making functions, were located, although its production facilities were located primarily in Connecticut. In contrast, the court in *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3rd Cir. 1960), found that Pennsylvania was the principal place of business of U.S. Steel Corporation as the place where its operations were concentrated, although its corporate headquarters was located in New York.

The more recent trend in the cases has been an endeavor to reconcile these two tests into a single approach:

"The courts have increasingly come to recognize that the earlier cases can be reconciled, in the light of their particular facts, and that a single rule can be applied. This looks to the place where the bulk of the corporate activity takes place, if there is any one state in which this is true, while resorting to the location of

---

1. Only two foreign subsidiaries are not wholly owned. The number of employees attributed to defendant from these two subsidiaries has been reduced in correspondence to the percentage of stock owned by defendant.

2. This brochure, subtitled "Reflecting the Many Faces of Budd", describes in considerable detail defendant's multi-faceted operations including a breakdown of its various groups and divisions, plant locations, domestic and foreign subsidiaries and the like. Featured prominently is a listing of its board of directors, corporate officers and corporate offices. The overall impression received from reading the brochure is that defendant is a Michigan based company operating in a number of states and overseas. The Pennsylvania emphasis argued by defendant simply is not there.

the home office only if the corporation's activities are dispersed among several states and no one state clearly predominates."

C. Wright, *Handbook of the Law of Federal Courts* 105 (West 3rd ed. 1976).[3] The Sixth Circuit appeared to follow this approach in *Riggs v. Island Coal Co.*, 542 F.2d 339, 342 (6th Cir. 1976):

> "If the 'bulk of the mining operations' were shown to be located in one state, we could accept the district court's conclusion that that state constituted the corporation's principal place of business. However, here the 'bulk' of the operations was divided in some unknown proportion among three states. In such a situation, the corporation's headquarters assumes more significance as the compelling factor in the principal place of business test. 'Where a corporation has more than one mine ... situated in different districts, its office from which supreme direction and control of the business generally is had, including the operation of several plants, may, and perhaps must, be deemed the principal place of business.' *Continental Coal Corp. v. Roszelle Bros.*, 242 F. 243 (6th Cir. 1917)."

Although the Court of Appeals in *Riggs* criticized the District Court's finding that Ohio could not be the mining corporation's principal place of business, even though it owns the location of corporate headquarters, without analyzing the nature and distribution of operations in other states, that finding was allowed to stand because corporate headquarters had been moved out of Ohio a year before trial, thus making clear that diversity existed at the time of judgment. The factual analysis called for in *Riggs*, however, was made in *Boggs v. Blue Diamond Coal Co.*, 432 F.Supp. 19 (E.D.

Tenn.1977), the sole reported decision applying *Riggs*. The District Court in *Boggs* concluded that Tennessee, the site of corporate headquarters, was the principal place of business of the defendant corporation even though most of the employees and production were located in Kentucky. Given that the corporation was "significantly present" in at least four states, with substantial operations and many employees located in three states, the court concluded that the location of the home office, where all executive officers as well as many engineers, accountants and sales personnel were housed, was determinative under *Riggs*. *Id.* at 23–24.[4]

### B.

Including the subsidiaries in the determination has precedent. In *Textron Electronics, Inc. v. Unholtz-Dickie Corp.*, 193 F.Supp. 456, 459 (D.Conn.1961) the court said:

> "The defendants argue that the activities of subsidiaries cannot properly be considered as part of the business carried on outside of the State of Connecticut. But it is certainly a part of the business of the plaintiff, as the parent corporation, to vote the shares of its wholly owned subsidiary and in so doing it must have a determining voice in establishing and overseeing its vital operations and functions. It is fair to suppose that this is done by plaintiff's officers and directors in Providence, Boston or New York. Certainly it is not done in Connecticut. Moreover, in this particular case, the testimony showed that GC Electronics, Inc., was treated by the plaintiff as one of its divisions. Inclusion of a subsidiary's business as a part of the business of the parent corporation for the purpose of lo-

**3.** See also 1 Moore's Federal Practice ¶ 0.77[3.–4], p. 717.77:

> "An increasing number of cases are limiting the application of the home office or nerve-center test to those corporations 'engaged in far flung and varied activities which are carried out in different states.' Where, however, the corporation has its physical operations concentrated in one state and its admin-

istrative or executive offices in another state, the place of operations is more frequently considered as decisive."

**4.** The District Court also was influenced by the fact that, as in this case, the corporation had taken the position in prior litigation before the same court that Tennessee was its principal place of business. *Id.* at 23.

cating the parent's 'principal place of business' is no innovation as far as the Bankruptcy Act is concerned."[5]

## V.

Applying the law as recited in Part IV to the facts described in Part III, the Court concludes that defendant's principal place of business is Michigan. Despite the substantial number of employees and amount of production attributable to Pennsylvania, it cannot be said that the "bulk" of operations is in Pennsylvania. Rather defendant is the kind of far-flung and diversified corporation for which the location of corporate headquarters should be determinative. Accordingly, there is a lack of diversity of citizenship and this case must be REMANDED to the Circuit Court for Wayne County, Michigan.

SO ORDERED.

---

**5.** The legislative history of § 1332(c) indicates that Congress intended that the standards for determining a corporation's principal place of business under the jurisdictional provisions of the Bankruptcy Act were to be considered as precedent. *See*: 13 Wright, Miller & Cooper, Federal Practice and Procedure, § 3624, p. 778.