## THOMSON, TRUSTEE OF CHICAGO & NORTH-WESTERN RAILWAY CO., et al. v. GASKILL et al.

No. 139. Argued January 7, 8, 1942.—Decided March 2, 1942.

*Messrs. Wymer Dressler* and *W. M. McFarland,* with whom *Messrs. W. C. Fraser, J. M. Grimm, Robert D. Neely, W. T. Faricy,* and *Samuel H. Cady* were on the brief, for petitioners.

*Mr. S. L. Winters,* with whom *Mr. Nelson C. Pratt* was on the brief, for respondents.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

The question for decision is whether the record shows an essential requisite of the jurisdiction of the District Court, namely, that the "matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000." Judicial Code, § 24 (1), 28 U. S. C. § 41 (1). There were other questions which, in the view we take of the case, need not be stated.

Respondents, forty-one conductors and brakemen employed by the Chicago & Northwestern Railway Company,

444

brought suit against the railroad and one Kimball, an employee of the road, in the United States District Court for the District of Nebraska. The complaint alleged that the plaintiffs "belong to" the trackage of the railroad called the Nebraska Division; that "the controversy arises over the division of seniority rights between the Nebraska Division to which plaintiffs belong, and the Sioux City Division to which the defendant George Kimball belongs, over the Northwestern road from Omaha, Nebraska to Sioux City, Iowa"; that trains running between these points moved over 31 miles of the Nebraska Division and 70 miles of the Sioux City Division; that prior to May 1, 1930, seniority rights of the plaintiffs were governed by certain contracts "referred to sometimes as the 'Schedule of Wages and Rules of Compensation for Conductors and Trainmen,'" which provided that, when trains were operated over more than one seniority district, the "percentage of miles run over each division will govern in assignment to such runs"; that since May 1, 1930, the railroad has assigned all of the work on the Omaha-Sioux City run to the Sioux City Division; that, although the railroad insists that the plaintiffs' seniority rights have been abrogated "by an alleged agreement between the said defendant railroad trainmen, and the order of Railway Conductors," the plaintiffs are not bound by such agreement; and that, on account of the "wrongful deprivation" of their seniority rights, the plaintiffs have been damaged in excess of $3,000.

The railroad's answer stated that the plaintiffs had only such seniority rights as were derived from agreements between the railroad and the Order of Railroad Conductors and the Brotherhood of Railroad Trainmen; that the agreements could be abrogated or modified by the railroad and the unions without the consent of the plaintiffs; that the track between Omaha and Blair, located on the Omaha-

Sioux City run, was not part of the Nebraska Division of the railroad; that this trackage is owned by the Chicago, St. P., M. & O. Railway Company; that the only part of the Nebraska Division on the run between Omaha and Sioux City is 7.5 miles long; and that the complaint did not show the existence of the required jurisdictional amount. The District Court ordered the plaintiffs to prove that more than $3,000 was involved, and ten of them submitted affidavits. The substance of each affidavit was that, since May 1, 1930, the Chicago & Northwestern had "operated trains over thirty-one miles of the Nebraska Division in violation of existing contracts," and that, "to the best of [affiant's] knowledge and ability," his loss exceeded $3,000. The defendants submitted affidavits supporting the allegations of their answers. But neither the pleadings nor the affidavits of the parties contain the terms of the various agreements referred to in the complaint and upon which the plaintiffs' action is based.

Upon the defendants' motion to dismiss the cause for want of jurisdiction, the District Court held that the pleadings and supporting affidavits established that "the amount in controversy as to any one plaintiff does not amount to as much as $3,000," and that the nature of the suit was not such as to permit aggregation of the claims of all the plaintiffs. Accordingly, the action was dismissed. The first conclusion of the District Court was not challenged either in the Circuit Court of Appeals or before us. The plaintiffs contended that their claims should be aggregated because "the rights of the plaintiffs are so interlocked and interwoven that the rights of one cannot be determined without the others being parties thereto." The Circuit Court of Appeals reversed the dismissal, holding that the plaintiffs' claims could be aggregated for purposes of determining the value of the matter in controversy. The Court stated that, although it found the com-

plaint "very difficult of analysis," it had construed it "most favorably to the pleader, for the purpose of passing on the sole question of jurisdiction raised on the appeal." 119 F. 2d 105, 108. We brought the case here, 314 U. S. 590, in view of the important question affecting the jurisdiction of the district courts.

The policy of the statute conferring diversity jurisdiction upon the district courts calls for its strict construction. *Healy* v. *Ratta,* 292 U. S. 263, 270; and see *Elgin* v. *Marshall,* 106 U. S. 578, 580. Accordingly, if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof. *McNutt* v. *General Motors Acceptance Corp.,* 298 U. S. 178, 188–89; *KVOS, Inc.* v. *Associated Press,* 299 U. S. 269, 278; *Gibbs* v. *Buck,* 307 U. S. 66, 72. The bill must be dismissed if the evidence in the record does not support the allegations as to jurisdictional amount. And our review of the District Court's determination of the jurisdictional amount must be confined to this record. *Henneford* v. *Northern Pacific Ry. Co.,* 303 U. S. 17, 19; *Clark* v. *Paul Gray, Inc.,* 306 U. S. 583, 589–90.

Since the record does not contain the various agreements upon which the plaintiffs' action is founded, there is no basis for determining whether this is a suit "in which several plaintiffs, having a common undivided interest, unite to enforce a single title or right, and in which it is enough that their interests collectively equal the jurisdictional amount," *Lion Bonding Co.* v. *Karatz,* 262 U. S. 77, 86; see *Shields* v. *Thomas,* 17 How. 3, 5; *Troy Bank* v. *Whitehead & Co.,* 222 U. S. 39, 40–41; *Gibbs* v. *Buck,* 307 U. S. 66, 74–75, or one in which "the matters in dispute are separate and distinct, and are joined in one suit for convenience or economy," *Davis* v. *Schwartz,* 155 U. S. 631, 647; see *Clay* v. *Field,* 138 U. S. 464, 479–80; *Russell* v. *Stansell,*

105 U. S. 303. Aggregation of plaintiffs' claim cannot be made merely because the claims are derived from a single instrument, *Pinel* v. *Pinel*, 240 U. S. 594, or because the plaintiffs have a community of interest, *Clark* v. *Paul Gray, Inc.*, 306 U. S. 583. In a diversity litigation the value of the "matter in controversy" is measured not by the monetary result of determining the principle involved, but by its pecuniary consequence to those involved in the litigation. *Wheless* v. *St. Louis*, 180 U. S. 379, 382; *Oliver* v. *Alexander*, 6 Pet. 143, 147.

The record contains no showing of the requisite jurisdictional amount, and the District Court was therefore without jurisdiction. The judgment will be reversed and the cause remanded to the District Court without prejudice to an application for leave to amend the bill of complaint.

*Reversed.*

MR. JUSTICE ROBERTS took no part in the consideration or decision of this case.