Donald E. HALL, Minor by his next friend, Mrs. D. R. Roberson, Plaintiff,

v.

Lillian T. FALL, Executor of the Estate of Boyd E. Fall, Deceased, Blowing Rock Furniture Industries, Inc., Blowing Rock Chair Company, and Roger Triplett, Sr., Defendant.

Civ. No. 487.

United States District Court
W. D. North Carolina,
Statesville Division.

Nov. 17, 1964.

**632**

W. C. Palmer, Lenoir, N. C., for plaintiff.

James R. Todd, Jr., Lenoir, N. C., for defendants.

CRAVEN, Chief Judge:

This is a lawsuit brought to recover damages for personal injuries received in an automobile collision which occurred December 18, 1963, in Caldwell County, State of North Carolina. The complaint was filed and the action was begun in this court. The defendants have filed a motion to dismiss the complaint because of lack of jurisdiction. If there is jurisdiction, it rests upon diversity of citizenship and the necessary minimum amount in controversy. 28 U.S.C.A. § 1332.

◼ Had the case been started in the Superior Court of North Carolina and removed to this court (which might well have occurred with the nominal positions of the parties reversed), probably remand to the state court would have been appropriate,[1] for it affirmatively appears that Donald Hall had always lived in Caldwell County, State of North Carolina, prior to this collision. Not until February 12, 1964, (some several months after the collision) did he move to Virginia. All of the defendants are residents of Caldwell County, State of North Carolina, and domiciled within this county and state. Donald Hall's mother and father and other relatives live in Caldwell County, North Carolina, and none of the facts suggest that he could not get a fair trial in the state court in Caldwell County, North Carolina. The underlying purpose of diversity jurisdiction—to provide a forum for out-of-state citizens and safeguard such citizens against the prejudices of local courts and local juries—does not appear to be present.

◼ But the motion of the defendants to dismiss is not addressed to the court's discretion. The question is simply one of jurisdiction, and not whether plaintiff might as well or better litigate his claim in the state court.

1. Whether appropriate or not, remand is not appealable—a sort of one-way unbridled discretion. 28 U.S.C.A. § 1447(d).

From the affidavits, pleadings, and deposition of plaintiff, the facts are found to be as follows:

Donald Hall is now eighteen years of age. He moved to Virginia on February 12, 1964. At present he lives and works as a clerk at a motel in Richmond. When asked why he had come to Virginia, Donald, in his deposition, said: "Well, the truth of that is that I came up to this court. (sic) And I had decided to live here permanently."

"Q.: When did you make up your mind you wanted to live in Virginia permanently?"

"A.: Well, I had thought about it for a pretty good while while I was in the hospital, which would have been along the first of the year (1964)."

\* \* \* \* \* \*

"Q.: What has been your relations with your mother and step-father insofar as any care or custody they have exercised over you in the last couple of years?"

"A.: None. They didn't tell me what to do. I did what I pleased. I didn't bother them any. The only thing, I kept my car in my mother's name."

\* \* \* \* \* \*

"Q.: Where did you register (for the draft)?"

"A.: Chester, Virginia."

\* \* \* \* \* \*

"Q.: Do you have a driver's license (for Virginia)?"

"A.: Yes sir."

\* \* \* \* \* \*

"Q.: Do you intend to make Virginia your home?"

"A.: Yes sir, permanently."

Donald Hall's father is living, but he has seen him only once during his life. Prior to his leaving home on the day he was sixteen, Donald lived with his mother and stepfather. Upon leaving home, he spent about two weeks with his grandmother, after which he got his own apartment. During this time, and for a period of about three years, he worked as a cook six nights a week at Hall's diner in Caldwell County. All of his earnings were used for his own personal benefit; he never sent any to his mother or stepfather, and neither did they claim any of his earnings. Plaintiff's car has (or had at time of his deposition) North Carolina license tags; it was bought in North Carolina in his mother's name because of his minority. He has not resided with his mother and stepfather since leaving home other than visiting, and then staying overnight only once. He buys his own clothes, and stated that he has done so since he was "about 12 years old." Plaintiff opened a personal checking account at a bank in Virginia in April of 1964. He has no bank account in North Carolina.

He testified:

"Q.: Who supported you between the date of the wreck in December 1963 and the time you went back to work?"

"A.: (Plaintiff) Insurance money. I had my own insurance policies in my own name."

\* \* \* \* \* \*

"Q.: Does your mother or step-father exercise any control over you by way of caring for you and retaining custody of you, Donald?"

"A.: No sir, they don't tell me nothing to do. And I don't ask them anything. And I don't ask them for anything."

Plaintiff's own father has submitted an affidavit to the effect that plaintiff since the age of sixteen has been free of all supervision, control, and restraint by either father or mother. Mrs. D. R. Roberson, nominal party plaintiff and next friend, is plaintiff's great aunt and resides in Richmond, Virginia.

From all of the evidence, of which the foregoing narrative is only a part, it is concluded that Donald Hall is an emancipated minor domiciled in the State of

Virginia. The proof is considered to be clear, cogent, and convincing, and the plaintiff has satisfactorily discharged the burden of proof which is upon him. Thomson v. Gaskill, 315 U.S. 442, 62 S. Ct. 673, 86 L.Ed. 951 at 955 (1942).

██ If Donald E. Hall was emancipated, he had a right to select his domicile for any reason that seemed sufficient to him. "To bring about a change of citizenship two things are indispensible: First, there must be residence in the new domicile; and, second, the intention to remain there permanently or indefinitely, and both physical presence and animus manendi in the new location must concur." Paudler v. Paudler, 185 F.2d 901 at 902 (5th Cir. 1950), rehearing denied. If plaintiff's new citizenship was acquired, his right to sue in the federal courts was a legitimate and legal consequence, not to be impeached by his motive, whatever it may have been, for acquisition of his new citizenship. Ibid.

██ Emancipation of a minor is not to be lightly assumed. 39 Am.Jur. "Parent and Child" Section 64. It is true, as said in Daniel v. Atlantic Coast Line Railroad Co., 171 N.C. 23, 86 S.E. 174 (1915), that the fact that a child is allowed to live away from its parents and receive his wages for work and pay his expenses does not amount to an emancipation unless it is the manifest intention of the parent to release all parental authority and control. Here, however, there is not one scintilla of evidence tending to show that either father or mother exercised any parental control or supervision over Donald E. Hall from his sixteenth birthday. Certainly by the time of the institution of this lawsuit, when he was approximately eighteen years of age, he had become fully emancipated.

██ Diversity of citizenship is determined as of the commencement of the action. 1 Barron & Holtzoff, Federal Practice and Procedure, Section 26. It is immaterial that plaintiff was a citizen of North Carolina at the time of the collision. Nor does it matter that his mo-

tive may have been partly or wholly in order to be able to bring suit in a federal court. Ibid, Section 26, at 136.

On March 20, 1964, when the complaint was filed in this court, Donald E. Hall was a citizen of the State of Virginia and all of the defendants were citizens of North Carolina. Since the amount in controversy was in excess of $10,000.00, jurisdiction of this court attached under the provisions of 28 U.S. C.A. § 1332. Motion of the defendants to dismiss will be denied.