**DELALANDE, INC., Plaintiff,**

v.

**William M. FINE, et al., Defendants.**

**No. 82 Civ. 2067–CLB.**

United States District Court,
S. D. New York.

Aug. 2, 1982.

---

Michael K. Stanton, Weil, Gotshal & Manges, New York City, for plaintiff.

Saul Sherman, Rivkin, Sherman & Levy, New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

This diversity action was brought by plaintiff, Delalande, Inc. ["Delalande"], on April 1, 1982, the same day on which the defendants herein served a motion for summary judgment in lieu of a complaint on Delalande in New York Supreme Court, New York County. Delalande removed the state action to this Court pursuant to 28 U.S.C. § 1441(c) on April 20, 1982, and it is now assigned to me as a related case, *Fine v. Delalande, Inc.,* 545 F.Supp. 275 [hereinafter the "*Fine* action"].

Plaintiff is a Delaware corporation, organized in May of 1980 for the purpose of acquiring the stock of Frances Denney Corporation ["Denney"] from the defendants who were former stockholders of Denney. A holding company, plaintiff is also a wholly-owned subsidiary of Delalande S. A., which is a French company engaged variously in the pharmaceutical, chemical and cosmetics business, and having subsidiaries throughout Continental Europe, Great Britain, Brazil and the United States. (Affidavit of Denis Simonin, Chairman of Delalande, sworn to May 10, 1982, ¶¶ 1–3, contained in Plaintiff's Notice of Cross-Motion, docketed May 12, 1982).

A claimed breach of the contract dated May 25, 1980 [the "Purchase Agreement"], pursuant to which Delalande acquired the capital stock of the Denney corporation on July 2, 1980, forms the basis of the *Delalande* and *Fine* actions. The Purchase Agreement provided that Delalande would purchase the Denney stock for $3,409,000. to be paid in various installments evidenced by a series of non-negotiable notes executed by Delalande and secured by an Irrevocable Letter of Credit issued by Banque Francaise du Commerce Exterieur of New York City. The separate promissory notes were made payable in amounts proportionate to the holdings of each stockholder.

In accordance with the notes and the Purchase Agreement, the Denney stockholders agreed to indemnify Delalande in the event of breach of certain express warranties and representations as contained in the Purchase Agreement. The maximum aggregate amount of such indemnification by all the stockholders jointly was limited to $1,800,000., with several liability limited to each stockholder's pro-rata share. Upon the filing of any claim of indemnity, the outstanding principal and interest due to the stockholders under the notes would be reduced by the amount of the indemnity claim with the remaining balance payable to each stockholder according to the pro-rata share.

On February 26, 1982, Delalande gave notice of such an indemnity claim to the former Denney stockholder-defendants seeking to recover $1,800,000. for the alleged breach of certain representations and warranties which are said to have caused damages to Delalande in the amount of $2,592,920.00. By letter dated March 11, 1982, defendants rejected the indemnity claim and demanded compliance with the payment terms set forth in the Purchase Agreement.

In its action Delalande now seeks, *inter alia,* a judgment declaring that the purchase price of the Denney stock be reduced, by the amount of its indemnity claim, to $1,609,000.; declaring that the amounts otherwise due and payable under the notes are

no longer owed in light of the indemnity claim; and awarding additional affirmative relief against the stockholder-defendants severally based upon claims of anticipatory breach and unjust enrichment.

As plaintiffs in the *Fine* action, the former stockholders of Denney seek to recover $1,252,104.45. plus interest and costs, due on March 1, 1982 in accordance with the Purchase Agreement. Despite timely presentment of the Irrevocable Letter of Credit to Banque Francaise du Commerce Exterieur in New York on that date, the *Fine* plaintiffs assert that defendant Delalande allegedly caused the bank to refuse to honor its letter and failed to meet subsequent demands for payment.

By motion docketed April 22, 1982, the stockholder-defendants seek the dismissal of the *Delalande* action pursuant to Rule 12(b), F.R.Civ.P., on the ground that this Court lacks subject matter jurisdiction in that the controversy is not wholly between citizens of different states. Urging that the principal place of business of Delalande is in New York or Pennsylvania, defendants seek the dismissal of the entire action in view of the citizenship of various defendants in each of these respective states.

It is not disputed and the Court finds that the following defendants are citizens of the state of New York: Edward Koss; Richard E. Deutsch and Norman L. Dolid, as trustees; Marshall Swartwood; Phyllis Wagner; Richard Deems; Lawrence Lachman; Susan Fine; and Dan Arje. These nine former stockholders of Denney represent 20% of the shares purchased, and 21% of the claims in issue. Plaintiff's Reply docketed June 4, 1982 at 4*.

Upon the stipulations of the parties and Orders of this Court dated May 21, 1982, and July 12, 1982, the *Delalande* action was dismissed without prejudice respectively against the defendants Carole Beller and Peter Petro who are also citizens of the state of New York.

Nor is it disputed and the Court finds that the following defendants are citizens of the state of Pennsylvania: Berwind Corporation; The Lea Company; and Paul Euwer. These defendants represent 36% of the shares purchased, and 37% of the claims in issue. Plaintiff's Reply Mem., *supra* at 3*.

Berwind Holdings, Inc., a Delaware Corporation, is a plaintiff in the *Fine* action, but is not a defendant in the *Delalande* action since Delalande is also incorporated in that state. In accordance with 28 U.S.C. § 1331(c), the nominee parent corporation, Berwind Corporation, was named as the defendant in *Delalande*. Plaintiff's Reply Mem., *supra* at 2; affidavit of W. Michael Garner, sworn to June 3, 1982, ¶ 2.

By cross-motion docketed May 12, 1982, plaintiff Delalande seeks alternative relief in the event that it is found that Delalande is a citizen of either New York or Pennsylvania. Urging that jurisdiction should be retained over the remaining diverse defendants, Delalande contends that the non-diverse defendants are not indispensable parties, and that the Court should exercise its ancillary jurisdiction over the diverse defendants who sue or are sued for claims amounting to less than $10,000.

Relevant to this discussion, but not decided herein, are the stockholder-plaintiffs' motions in the related *Fine* action. By motions docketed April 23, 1982 and May 5, 1982, the stockholder-plaintiffs seek, respectively, summary judgment pursuant to Rule 56, F.R.Civ.P., and the remand of the *Fine* action to the New York Supreme Court, New York County on the grounds that removal under 28 U.S.C. § 1441(c) was improper. In addition, the defendant, Delalande, seeks by cross-motion the grant of summary judgment in its favor.[1]

An evidentiary hearing was held in this Court on May 14, 1982 to determine the principal place of business of Delalande, Inc. as it related to the *Delalande* jurisdictional motions and the *Fine* remand motion.

---

1. By stipulation and Order of this Court dated May 6, 1982, the stockholder-plaintiffs' motion for summary judgment and the defendant Delalande's cross-motion for summary judgment in the *Fine* action was held in abeyance pending this Court's determination of the *Fine* motion to remand and the *Delalande* motion to dismiss for want of diversity jurisdiction.

For the reasons set forth herein, the stockholder-defendants' motion to dismiss for want of jurisdiction is granted, and plaintiff's motion for alternative relief is denied.

■ We begin by observing that the burden of establishing subject matter jurisdiction is upon the party who seeks the exercise of that jurisdiction, which in this case is the plaintiff, Delalande. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 675, 86 L.Ed. 951 (1942); *Danbury Bowlarama Corp. v. RCA Corp.*, 414 F.Supp. 354, 355 (S.D.N.Y.1976). As was held in *Thomson, supra* 315 U.S. at 446, 62 S.Ct. at 675:

> "The policy of the statute conferring diversity jurisdiction upon the district courts calls for its strict construction. (citations omitted) Accordingly, if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof." (citations omitted)

Courts have generally looked with disfavor upon the claim by corporations that they are citizens exclusively of their state of incorporation for want of readily identifiable principal places of business elsewhere. *See, e.g., R. G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 654–55 (2d Cir. 1979); *Egan v. American Airlines, Inc.*, 324 F.2d 565, 566 (2d Cir. 1963). This policy is grounded both upon the historical development of the diversity statute, 28 U.S.C. § 1331(c), which deems a corporation a "citizen of any State by which it has been incorporated and of the State where it has its principal place of business", and also because it is unfair to permit a corporation to avoid litigation "in the court of a state where it transacts its principal business by means of a legal device not available to an individual citizen." *R. G. Barry Corp., supra* at 654. Furthermore, it has been recognized that the intent of this provision for "dual citizenship" for corporations found in the diversity statute was to minimize and reduce the caseload of the federal courts based upon diversity. *Egan, supra* at 566; *Danbury Bowlarama Corp., supra* at 357 n.3.

In its complaint Delalande alleges that it is a corporation organized under the laws of Delaware, having its sole principal place of business in Paris, France. In support of this assertion, Delalande points to its internal organizational and operational structure which vests its principal decision-making authority in its directors and officers in Paris, France.

By way of necessary background, it can be seen that the internal structure posited by Delalande is reflected in the interlocking corporate maze which embraces several corporations sharing a common management. The parent company is Delalande S. A., which is based in France, and organized under its laws. Two of the wholly-owned subsidiaries of Delalande S. A. are Delalande, Inc. and Coparel S. A., the latter of which is based in Paris and constitutes the cosmetic enterprise of the diversified Delalande S. A. parent corporation. Affidavit of Simonin, *supra* at ¶ 1 and (*); Transcript of May 14, 1982 ["tr."] at 6–7.

Coparel S. A. in turn is the mother company of Coparel, Inc., which is owned in part by Delalande, Inc. and has its office in New York City. The Frances Denney Corporation, whose stock was acquired by Delalande, Inc., is organized under the laws of New York and shares its office with Coparel, Inc. in New York City. Affidavit of Simonin, *supra* at ¶ 8(a), (c); tr. at 7–8.

The three directors of Delalande, Inc. are also officers of Delalande S. A. or Coparel S. A. Of the seven directors of the Frances Denney Corporation, three are also officers of Delalande S. A. or Coparel S. A. Affidavit of Simonin, *supra* at ¶ 4, 8(a); tr. at 13.

The officers of Delalande, Inc. are Denis Simonin (president and treasurer), who is also the president of Coparel S. A.; Stuart W. Hobbs (senior vice-president and chief financial officer), who is also a full-time employee of Frances Denney Corporation; and Donald Rivkin (secretary), who is also a member of the New York law firm which represents the Delalande enterprises. The offices of each are respectively located in

Paris, Philadelphia and New York City. Affidavit of Simonin, *supra* at ¶ 5; affidavit of Stuart W. Hobbs, sworn to May 11, 1982, ¶ 1, contained in Plaintiff's Notice of Cross-Motion, docketed May 12, 1982.

In view of the inter-locking web of the corporate structure of Delalande S. A., Delalande contends that with the exception of certain fiscal transactions, all decision-making authority flows from Paris and from Delalande S. A. in particular. Although Mr. Simonin observes that he is the only officer of Delalande having discretionary authority, he claims that "the more important decisions are made upon instructions received in Paris from our parent company, Delalande S. A." Affidavit of Simonin, *supra* at ¶ 4.

In further support of this contention, Delalande urges that it has no offices, real estate, telephone listing, telex number or any tangible presence in the United States. Affidavit of Simonin, *supra* at ¶ 6; tr. at 9. When meetings are held in the United States with regard to the business of Delalande, they take place at the Denney offices in New York City, which also serve as the offices of Coparel, Inc. Tr. at 14.

Were these the only factors to be considered, it would be clear that the standard to be applied in determining the principal place of business of Delalande would be the "nerve center" test, first articulated in *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959), and reaffirmed in *R. G. Barry Corp., supra* at 655:

> "[T]he principal place of business of a far-flung corporation enterprise is 'the nerve center' from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective."

■ In contrast to the "corporate operations" test enunciated in *Inland Rubber Corp. v. Triple A Tire Service, Inc.*, 220 F.Supp. 490 (S.D.N.Y.1963), which focuses upon the locus of the corporations's physical operations, the "nerve center" test reviews the totality of the corporate activity at any given place, focusing upon the "center of gravity" of corporate functions. *Scot Typewriter Co., supra* at 865. Considered more appropriate when determining the principal place of business of diversified corporations, the "nerve center" test has been frequently applied to holding companies or parent corporations with subsidiaries scattered throughout several states. *See, e.g., Moore's Federal Practice* ¶¶ 0.77[3.–2], 0.77[3.–4].

■ Accordingly, if the "nerve center" test were to be applied to the aforementioned factors, as Delalande would urge this Court to do, the principal place of business of Delalande would be Paris, France.

The difficulty presented, however, is that while the direction and control of Delalande may radiate from its parent company in Paris, the management and implementation of these decisions and policies are effectuated principally in New York. Unlike the factual circumstances presented in *Scot Typewriter Co.*, it cannot be said that the policy determinations as well as the direction and control of the corporate affairs of Delalande are conducted by the executives of Delalande S. A. in Paris, France. This is explainable in part because furtherance of the corporate objective of Delalande, Inc. concerns its acquisition and direction of the Denney stock ownership and its minority interest in Coparel, Inc., each of whose businesses are located in New York.

Moreover, the central issue here concerns the principal place of business of Delalande, Inc. and not that of its parent, Delalande S. A. It is an anomalous situation to suggest that a subsidiary's "center of gravity" is determined with reference to that of its parent, when it is the reverse analysis which is applied generally.

Whether it be the result of corporate convenience, or the company's own recognition that its existence is directly intertwined with that of Denney and Coparel, Inc., it is also apparent that Delalande itself identifies its principal place of business for purposes of dealing with other entities in

the United States to be the offices of its law firm and corporate secretary in New York. For example, documents presented at the evidentiary hearing of May 14, 1982 include: (a) a guaranty in the French language by Delalande S. A. of the obligations of Delalande, Inc. to the Wells Fargo Bank, signed in France in July 1981. This document identifies Delalande, Inc. as a "US company with main office at 750 Third Avenue, New York, NY"; (b) Delalande's corporate franchise tax returns for the state of Delaware for 1980 and 1981 which respectively identify its principal place of business as "none" and as "New York, New York"; and (c) the Certificate of Delalande's Secretary made in conjunction with a guaranty of Denney's lease of a Pitney-Bowes machine in July 1981, which identifies Delalande's principal place of business as "Suite 3100, 750 Third Avenue, New York, New York."[2]

In like fashion, the financial transactions of Delalande with respect to its operating expenses, e.g., its payment obligations to its lawyers, accountants and auditors, are conducted in New York (tr. at 16, 18), although its principal borrowing relationships are with domestic banks located in California and Pennsylvania. Delalande's auditors are also located in New York (tr. at 27–28), and were the repository of its books of account until July 1981. Since that time, the fiscal records have been stored in Pennsylvania at the office of its chief financial officer, Stuart Hobbs, who is principally employed by the Denney corporation. Tr. at 39–40; affidavit of Hobbs, *supra* at ¶ 3. The significance of Delalande's fiscal storage-keeping in Pennsylvania is minimal, however, in view of Hobbs' own assertion that "the volume of our [he and other Denney employees] work on Delalande, Inc. matters has been trivial." Affidavit of Hobbs, *supra* at ¶ 3.

While not dispositive of the issue, the fact that the name "Delalande" appears on the entrance doors of the offices of Denney and Coparel, Inc. at 437 Madison Avenue, New York, where the monthly meetings are conducted by Delalande's chairman in connection with the business of Denney (tr. at 24), further illustrates Delalande's own identification of its business with that of these companies as well as of its situs of business in New York. Affidavit of William M. Fine, sworn to April 15, 1982, ¶ 10, exh. C., contained in Defendants' Notice of Motion, docketed April 22, 1982. Although Delalande contends that the door name intends to refer to "Delalande S. A." (tr. at 15), this is not sufficient in itself to rebut, nor does it necessarily contradict the equally credible inference that the business of Delalande, Inc. is intricately intertwined with that of these two companies and also conducted from that office with "Delalande" on the door.

Although Delalande recognizes that the documents presented at the evidentiary hearing, as well as the entrance door name, constitute "admissions" within the meaning of Rule 801(d)(2), F.R.Evid., it nevertheless contends that such have been "rendered nugatory by other evidence in the case", *Ira S. Bushey & Sons v. W. E. Hedger & Co.*, 40 F.2d 417, 418 (2d Cir. 1930), and are consequently not dispositive of the issue. *See Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 87 (S.D.N.Y.1974).

This contention, however, ignores the burden of proof which is placed squarely upon Delalande to establish, by competent proof, its right to a federal forum. *R. G. Barry Corp., supra* at 655. Not only is it not proper to require the moving plaintiffs to rebut Delalande's claim to diversity juris-

---

**2.** Although Delalande contends that only the Wells Fargo guaranty was actually received in evidence at the evidentiary hearing of May 14, 1982, this Court will consider both these documents and the testimony elicited with regard to them during the direct and cross-examinations. No procedural unfairness to Delalande will result, particularly in view of Delalande's statement, tr. at 34:

"Rather than prolong the proceedings needlessly, I am here fully intending and fully equipped to hand to your Honor such instances as we have been able to find in the absence of an opportunity for our opponent by means of discovery to produce these himself and in the interest of fairness and full disclosure . . . ."

diction, *R. G. Barry Corp., supra*, but these admissions cast doubt upon the sufficiency of Delalande's showing in support of its claim. As was held in *Leve v. General Motors Corp.*, 246 F.Supp. 761, 762 (S.D.N.Y.1965),

> "The burden of proof rests upon General Motors, which claims Federal jurisdiction, so that if the court is in doubt, the motion for remand should be granted." (citations omitted)

Viewing the totality of the evidentiary record, it cannot be said that Delalande has carried its burden of showing by competent proof that this Court has diversity jurisdiction.

The Court finds that the principal place of business of Delalande is in New York.

■ Finally, we turn to Delalande's cross-motion which urges this Court to retain jurisdiction over the claims against the diverse defendants, and dismiss the action only in regard to the New York defendants. Relying upon *Kerr v. Compagnie de Ultramar*, 250 F.2d 860 (2d Cir. 1958), Delalande contends that the non-diverse defendants are not indispensable parties under Rule 19, F.R.Civ.P., and may be dismissed without prejudicing the remaining defendants.

This Court recognizes that the liability of the stockholder-defendants is several, and that the parties have as a matter of contract resolved the apportionment of liability, if any is to be found. *See* section 5.4 of the Purchase Agreement, as contained in Defendant's Notice of Cross-Motion, docketed May 12, 1982, exh. 2, affidavit of W. Michael Garner, sworn to May 11, 1982.

Nevertheless, this Court remains mindful of the teachings of *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109, 88 S.Ct. 733, 737, 19 L.Ed.2d 936 (1968), and *Prescription Plan Service Corp. v. Franco*, 552 F.2d 493, 497 (2d Cir. 1977), which reviewed the considerations to be weighed with regard to Rule 19, F.R.Civ.P.

> "First, the court is to weigh the interest of the plaintiff in having a forum, with the strength of this interest dependent upon 'whether a satisfactory alternative

forum exists.' ... Second, the defendant's interest in avoiding multiple litigation, inconsistent relief and sole responsibility for a liability jointly shared must be considered.... Third, there is the interest of any outsider 'whom it would have been desirable to join,' as to which the court must evaluate whether the outsider's ability to protect his interest will be impaired or impeded by a judgment in his absence.... Finally, 'the interest of the courts and the public in complete, consistent, and efficient settlement of controversies' should be assessed."

Unlike the circumstances in *Prescription Plan* where there was no evidence that "appellant could bring 'the *same* action, against the *same* parties plus [the non-diverse ones], in a state court,'" *id.* at 497, it is clear that the present controversy can be litigated fully against all parties in the state court.

Moreover, considerations of judicial economy and fairness discourage the piecemeal litigation which would result by retaining jurisdiction solely over the diverse defendants. First, in light of this Court's finding that New York is the principal place of business of Delalande, the *Fine* action has been remanded to the state court since removal under 28 U.S.C. § 1441(c) was improper. *See* Memorandum and Order of this Court of this date, *Fine v. Delalande, Inc.*, 545 F.Supp. 275.

Since the acquisition of the Denney stock forms the basis both of the *Delalande* and *Fine* actions, it would be improvident to encourage the possibility of inconsistent results and to increase judicial inefficiency. Secondly, despite the several liability of each of the defendants, the claims have yet to be considered on the merits. It would be as unfair to subject the diverse defendants to multiple litigation in two forums, as it would be to limit the participation of the non-diverse defendants to a single forum.

In sum, this Court believes that the "public stake in settling disputes by wholes" will be best served by dismissing the action as to all defendants. *Provident Bank, supra* 390 U.S. at 111, 88 S.Ct. at 738.

Accordingly, defendants' motion to dismiss as to all defendants for want of subject-matter jurisdiction is granted, and plaintiff's cross-motion for alternative relief is denied in all respects. The foregoing constitutes findings of fact and conclusions of law with respect to the evidentiary hearing.

The Clerk shall enter a judgment dismissing this action without prejudice and without costs.

So Ordered.