**TONOGA, LTD., d/b/a Taconic Plastics Ltd., Plaintiff,**

v.

**MINISTRY OF PUBLIC WORKS AND HOUSING OF THE KINGDOM OF SAUDI ARABIA, the Kingdom of Saudi Arabia, Werner Voss Architects and Engineers, and Werner Voss, Defendants.**

**No. 99–CV–0803 LEK DRH.**

United States District Court, N.D. New York.

March 13, 2001.

E. Guy Roemer, Roemer Law Firm, Albany, NY, Michael D. Savage, pro hac vice, steven R. Popofsky, pro hac vice, Gersten, Savage law firm, New York City, for Tonoga, Ltd.

Alexandra A. E. shapiro, pro hac vice, Latham Watkins Law Firm, New York City, Matthew T. Martens, Latham, Watkins Law Firm, Newark, NJ, for Ministry of Public Works and Housing of Kingdom of Saudi Arabia, Kingdom of Saudi Arabia.

Margaret J. Gillis, Whiteman, Osterman Law Firm, Albany, NY, for Werner Voss Architects and Engineers, Werner Voss.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

·Presently before the Court is a motion to dismiss by Defendants Ministry of Pub-

lic Works and Housing of the Kingdom of Saudi Arabia and the Kingdom of Saudi Arabia (collectively the "Sovereign Defendants"). For the following reasons the Sovereign Defendants' motion is DENIED.

## I. BACKGROUND

Plaintiff Tonoga, Ltd., d/b/a Taconic Plastics Ltd. ("Taconic") is a materials manufacturer incorporated in Ireland with its principal place of business located in Petersburgh, New York. The Sovereign Defendants are foreign states within the meaning of the Foreign Sovereign Immunities Act ("FSIA"). *See* 28 U.S.C. § 1603(a); *see Reiss v. Societe Centrale Du Groupe Des Assurances Nationales,* 235 F.3d 738, 746 (2d Cir.2000).

In 1997 Taconic entered into a contract with a German construction company to supply specialized membrane material for a Saudi Arabian tent project designed to shelter religious pilgrims visiting holy sites there. Shortly after entering into this contract, the German construction company failed to make scheduled payments to Taconic and eventually filed for bankruptcy. Defendant Voss and his engineering firm, defendant Werner Voss Architects and Engineers, acting, for the purposes of this motion, as the Sovereign Defendants' authorized agent,[1] allegedly guaranteed the payments due Taconic via a series of three letter agreements in order to induce it into completing the tent project.[2]

Taconic completed manufacturing of the material needed for the tent project and received two of the three payments due, the source of which is in dispute,[3] but did not receive the final payment due. Claiming that each of the named defendants breached the guarantee, Plaintiff brought suit in this Court seeking to collect, in part, DM 5,560,530.70, or about $3 million,[4] the final payment owed under the alleged guarantee. The Sovereign Defendants brought the current motion to dismiss based upon lack of subject matter jurisdiction, lack of personal jurisdiction, and forum non conveniens.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

■ A court may dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when it lacks the constitutional or statutory power to adjudicate the case.

1. It is generally accepted that an agent's acts are attributable to the principal for jurisdictional purposes when the agent has actual, as opposed to apparent, authority. *See Gilson v. Ireland,* 682 F.2d 1022, 1026 n. 16 (D.C.Cir. 1982). This Court's jurisdictional assumption is not a conclusive resolution of defendant Voss' authority to enter into the guarantee on behalf of the Sovereign Defendants. If future discovery indicates that defendant Voss did not have the requisite actual authority to bind the Sovereign Defendants, they may submit additional motions as appropriate.

2. The three letter agreements were issued on November 12, 1997, January 22, 1998, and January 23, 1998.

3. Plaintiff claims that the Sovereign Defendants made these payments pursuant to the alleged guarantee while the Sovereign Defendants claim that the German construction company made the payments pursuant to the underlying material contract. For purposes of this motion, the Court assumes that the Sovereign Defendants made these payments but notes that it may need to reexamine this and its other subject matter jurisdiction findings as the factual record becomes more developed. *See Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London,* 147 F.3d 118, 121 n. 1 (2d Cir.1998).

4. Pursuant to the underlying material contract which the Sovereign Defendants were guaranteeing, all payments were remitted to a bank account located in Germany.

*See* Fed R. Civ. P. 12(b)(1). In fact, because federal courts are courts of limited jurisdiction and can adjudicate "only those cases within the bounds of Article III of the United States Constitution and Congressional enactments stemming therefrom," *Walsh v. McGee,* 899 F.Supp. 1232, 1236 (S.D.N.Y.1995), whenever "it appears by suggestion of the parties or otherwise" that this Court lacks jurisdiction of the subject matter it must affirmatively dismiss the action, Fed.R.Civ.P. 12(h)(3).

 As such, the burden of proving that a federal court has subject matter jurisdiction over an action rests upon the party attempting to invoke the court's jurisdiction, *see Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942), and no presumption of truth attaches to the non-moving party's allegations, *see Brown v. American Legion Cortland City Post,* 64 F.Supp.2d 96, 97 (N.D.N.Y.1999). Moreover, since a dismissal under 12(b)(1) is not a dismissal on the merits and is without res judicata effect on the underlying merits of the claims, when a court dismisses a case pursuant to 12(b)(1), it is precluded from exercising supplemental jurisdiction over related state claims. *See Cushing v. Moore,* 970 F.2d 1103, 1106 (2d Cir.1992).

i. Subject Matter Jurisdiction Under the FSIA Generally

Under the FSIA, a foreign state is presumptively immune "from the jurisdiction of the United States and of the States" unless one of several statutory exceptions applies. 28 U.S.C. § 1604; *see Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 610–11, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). The most significant of these exceptions, and the one at issue here, is the "commercial activity" exception codified under 28 U.S.C. § 1605(a)(5). *See Weltover,* 504 U.S. at 610–11, 112 S.Ct. 2160.

In relevant part, this portion of the FSIA states that a foreign state is not immune from suit in any case

in which the action is based [1] upon a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state or elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Plaintiff argues that the first ("commercial activity clause") and third ("direct effect clause") clauses of 28 U.S.C. § 1605(a)(2) confer subject matter jurisdiction in the present case. Because the Court concludes that the commercial activity clause provides it with subject matter jurisdiction, it does not address whether the direct effect clause also provides it with subject matter jurisdiction.

ii. Subject Matter Jurisdiction Under Clause One of 28 U.S.C. § 1605(a)(2)

 Under the commercial activity clause, a state does not have sovereign immunity for claims "based upon commercial activity carried on in the United States." 28 U.S.C. § 1605(a)(2). Thus, courts analyzing whether subject matter exists under the commercial activity clause must consider two factors. First, the lawsuit must be based upon commercial activity of the foreign state defendants. *See Shapiro v. Republic of Bolivia,* 930 F.2d 1013, 1018 (2d Cir.1991). Second, that activity must be carried on in the United States. *See id.*

a. Based Upon Commercial Activity

 The FSIA defines commercial activity as "either a regular course of

commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). A · particular transaction, course of conduct, or act undertaken by a foreign state qualifies as commercial activity when the state "acts not in its governmental or public role, but rather as a private player in the marketplace." *United States Fid. and Guar. Co. v. Braspetro Oil Serv. Co.*, 199 F.3d 94, 98 (2d Cir. 1999). Here, the Sovereign Defendants allegedly engaged in a series of guarantee transactions that allowed it to step into the shoes of a financially troubled "private player", the German construction company, in order to ensure that the tent project was completed. Because of this, the Court concludes that the Sovereign Defendants' guarantee of the underlying material contract was commercial activity under the FSIA. *See, e.g., id.* at 99 (holding that a foreign state's assumption of liability under a collection of performance guarantee bonds constituted commercial activity under the FSIA).

■■■■ A suit is "based upon" this commercial. activity when the elements of plaintiff's claim, if proven, entitle it to relief under its theory of the case. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 357, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). This means that Plaintiff's claims must have something more "than a mere connection with, or relation to, [the] commercial activity" in question. *Id.* at 358, 113 S.Ct. 1471. Since Plaintiff's claim is premised upon the Sovereign Defendants' alleged breach of and fraudulent inducement into these guarantees, it has more than a mere connection to the commercial activity. As such, the Court concludes that Plaintiff's claim is based upon the Sovereign Defendants' commercial activity. *See Gemini Shipping, Inc. v. Foreign Trade Org. for Chems. and Foodstuffs*, 647 F.2d 317, 319 (2d Cir.1981).

b. Carried on in the United States

■■■■ A commercial activity is carried on in the United States when it "has substantial contact" with this country, 28 U.S.C. § 1603(e). In order for a commercial activity to have substantial contact with this country, a significant nexus must exist between the commercial activity alleged to occur in this country and plaintiff's cause of action. *See Reiss*, 235 F.3d at 747. This nexus standard is tighter "than the 'minimum contacts' standard for due process," *Shapiro*, 930 F.2d at 1019, and if the state alleging sovereign immunity engages only in "isolated or transitory contacts with the United States," subject matter jurisdiction under the commercial activity clause will not lie. *Zedan v. Saudi Arabia*, 849 F.2d 1511, 1513 (D.C.Cir. 1988).

In this case, both Plaintiff and the Sovereign Defendants sharply dispute the facts relating to the guarantee's negotiation and execution. Plaintiff claims that defendant Voss negotiated portions of the guarantees with it during a visit to Plaintiff's New York plant on November 6, 1997. The Sovereign Defendants argue that no such negotiations took place during defendant Voss' visit to this country. Additionally, the Sovereign Defendants claim that, because the first alleged guarantee was executed in Saudi Arabia during a visit by Plaintiff's chief operating officer there and called for payments to an account in Germany, the commercial activity in question here had no substantial contacts with this country and therefore was carried on abroad.

■■■■ This Court disagrees with the Sovereign Defendants. Regardless of whether substantial portions of the alleged guarantees were negotiated in this country or called for payments here, when "the commercial activity in question centers on

the formation of a contract, the United States will be found to have had a substantial contact with that activity if ... substantial aspects of the contract were to be performed here." *Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1113 (S.D.N.Y.1982); *see Morgan Equip. Co. v. Novokrivorogsky State Ore Mining and Processing Enter.*, 57 F.Supp.2d 863, 872 (N.D.Cal.1998). Applying this principle to the record before the Court, it is apparent that the alleged guarantees had substantial contact with this country.

As to the November 12, 1997 letter agreement, although it contains no express provisions requiring material manufacture to occur in this country, subsequent production status reports submitted to the court indicate that through January 16, 1998 84,713 square meters of material were manufactured, at least partially in the United States, as a result of the November guarantee. This portion of material represented a significant majority of the total amount of material Plaintiff produced pursuant to the alleged guarantee and underlying material contract. Moreover, since the Sovereign Defendants sent their agent and his representatives to this Country before the first letter agreement was signed in order to ensure that all performance quotas would be met, the Court concludes as a factual matter, that significant aspects of the alleged guarantee were to be performed here.

This analysis is borne out upon examination of the second and third letter agreements. In particular, the January 22, 1998 letter agreement, signed by Plaintiff's chief operating officer and defendant Voss, declares that "Taconic will make tomorrow's shipment of approximate [sic] 15,000 m² from Petersburgh and 7,000m² from Ireland for a total of approximately 22,-000m2 *on open terms*." As compensation for this material delivery, Plaintiff alleged-

ly received four million deutsch marks allegedly from the Sovereign Defendants. These terms reflect the fact that both the Sovereign Defendants and Plaintiff understood and expected Plaintiff to utilize its manufacturing facilities located in this country to fulfill the majority of its duties under the alleged guarantee.

Finally, the January 23, 1998 letter agreement, again signed by Plaintiff's chief operating officer and defendant Voss, reflects their mutual understanding that significant portions of the guarantee were to be performed in this country. The terms of that letter agreement state that Plaintiff agrees to "work within a DM2mm credit limit, meaning the value of unpaid Taconic goods outside of the U.S. or Ireland will not exceed this amount." This statement implies that significant sums of material manufacturing pursuant to this letter agreement, like the two prior, was to occur in the United States. Given this fact, the Court concludes that the commercial activity in question, the Sovereign Defendants' alleged guarantee of Plaintiff's manufacturing contract, had substantial contacts with the United States such that it was carried on in this country. Consequently, the Court holds that it has subject matter jurisdiction over Plaintiff's claims against the Sovereign Defendants and their motion to dismiss for lack of subject matter jurisdiction is denied.

## B. *Personal Jurisdiction*

 Personal jurisdiction over the Sovereign Defendants under the FSIA "equals subject matter jurisdiction plus valid service of process" and is constrained only by constitutional due process standards. *Reiss*, 235 F.3d at 746 (quoting *Shapiro*, 930 F.2d at 1020). The Sovereign Defendants have not mounted any service of process challenge in this case. They have, however, launched a due process attack on

this Court's assertion of personal jurisdiction over them.

■ The due process clause permits a forum to exercise personal jurisdiction over a non-resident defendant when the defendant has "certain minimum contacts [with the forum] ... such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'" *Calder v. Jones,* 465 U.S. 783, 788, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940) and *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)); *see Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). When, as here, the action arises from defendants' contacts with the forum state, a court need only conclude that "limited" or "specific jurisdiction exists" in order for the suit to proceed. *Chaiken v. VV Publ'g Corp.,* 119 F.3d 1018, 1027–28 (2d Cir.1997). In such a case, the "required minimum contacts exist where the 'defendant purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,* 241 F.3d 135, 152–52 (2d Cir.2001).

■ In addition to the above requirements, the assertion of personal jurisdiction must be reasonable under the circumstances of the case. *See id.* Whether it is reasonable for the court to exercise personal jurisdiction depends on

(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy;

and (5) the shared interest of the states in furthering substantive social policies. *Chaiken,* 119 F.3d at 1028 (quoting *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 568 (2d Cir.1996)).

■ Here the record establishes that the Sovereign Defendants "purposefully availed" themselves of the United States forum by negotiating and forming a contract with a corporation that has its principal place of business in New York. To facilitate the formation of this contract, the Sovereign Defendants sent their agent to this country to check on the status of Plaintiff's manufacturing capabilities and understood that substantial portions of the contract were to be performed here. Given the Sovereign Defendants' actions, they should have foreseen the possibility of being haled into an American Court if a dispute arose as to their guarantee of the underlying manufacturing contract.

■ Additionally, the Court's exercise of jurisdiction is reasonable. The United States has a distinctly palpable interest in providing a forum for the resolution of contract disputes that are substantially performed here. Moreover, because the Plaintiff has its principal place of business here and conducted the majority of its manufacturing here, resolution of the current dispute in the United States is convenient and effective. Resolving the current dispute here is also more efficient than doing so elsewhere as good portions of the evidence and witnesses reside here. Finally, providing a forum to adjudicate contractual disputes that are substantially performed here furthers the substantive social policy of providing accountability against those that engage in commerce in this country and injure those that they deal with here.

The only factor weighing against the reasonableness of exercising personal jurisdiction over the Sovereign Defendants in

this case is the burden that the exercise of jurisdiction imposes on them. The Court finds, however, that on balance this factor does not outweigh the other factors pertinent to this Court's reasonableness analysis. As such, the Court concludes that exercising personal jurisdiction over the Sovereign Defendants is not unreasonable and it denies their motion to dismiss based on lack of personal jurisdiction.

C. *Improper Venue or Transfer to the United States District Court for the District of Columbia*

 The statute governing venue in cases arising under the FSIA against a "foreign state" provides that venue is proper "in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(f)(1). A substantial part of the events or omissions giving rise to a breach of contract claim occurs in any district where the contract "was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *PI, Inc. v. Quality Prods., Inc.*, 907 F.Supp. 752, 757–58 (S.D.N.Y.1995). As already discussed, the Court concludes that a substantial portion of the alleged guarantee was to be performed in this district. Accordingly, the Court concludes that venue is proper here and denies the Sovereign Defendants' motion to dismiss for improper venue or transfer to the United States District Court for the District of Columbia.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that the Sovereign Defendants' motion to dismiss is DENIED; and it is further

ORDERED that the Clerk of the Court serve a copy of this ORDER on all parties by regular mail.

IT IS SO ORDERED.