**DEPONTE INVESTMENTS,
INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 02–141C.**

United States Court of Federal Claims.

Oct. 3, 2002.

---

Richard J. Conway, Washington, DC, attorney for Plaintiff.

Lawrence Norman Minch, Washington, DC, attorney for Defendant.

## OPINION

WILSON, Judge.

This contract dispute is before the Court on defendant's RCFC 12(b)(1) motion for partial dismissal for lack of jurisdiction. Defendant argues that plaintiff's failure to submit a claim requesting monetary relief to the contracting officer precludes the Court from exercising jurisdiction over plaintiff's request for damages arising from the termination of its lease for default. Plaintiff opposes the motion on the ground that the contracting officer's final decision terminating the lease for default enables the Court to exercise jurisdiction over both its termination claim and its request for money damages. For the reasons discussed below, the Court GRANTS defendant's partial motion to dismiss.

## BACKGROUND

On August 24, 1998, the General Services Administration (GSA) awarded Lease No. GS–07–14651 (the Lease) to plaintiff for construction and leaseback of a building to house the Social Security Administration in Gallup, New Mexico. The building was to be com-

pleted within 180 days after a supplemental lease agreement incorporating a floor plan drawing was signed and delivered by defendant. In January 1999, the parties executed Supplemental Lease Agreement No. 1 incorporating the floor plan into the Lease. The execution of Agreement No. 1 established an original completion date of July 1999. Two additional supplemental Lease Agreements were negotiated by the parties extending the completion date to December 31, 2000.

GSA declined plaintiff's request for a further extension of the construction completion date. On January 12, 2001, GSA directed plaintiff to stop work on the project. On February 21, 2001, defendant wrote a letter to plaintiff terminating the Lease for default effective February 22, 2001. The letter was characterized as "the final decision of the Contracting Officer" in accordance with the Lease's disputes clause. GSA's letter also informed plaintiff of its right to appeal the termination decision to the General Services Board of Contract Appeals or this Court. Plaintiff subsequently filed a claim with the Board, which dismissed the claim as untimely. *DePonte Investments, Inc. v. General Services Administration,* GSBCA 15,601, 01–2 BCA ¶ 31,571, 2001 WL 921468. No post-termination demand for monetary compensation was made by either party prior to plaintiff's initiation of this case before the Court of Federal Claims (CFC).

Plaintiff's complaint alleges breach of contract in the form of unlawful termination for default and seeks relief in the form of damages for breach of the lease's termination clause, interest and attorney's fees in an amount to be determined. As grounds for damages, plaintiff further alleges that GSA "took action in connection with unrelated lease procurements to ensure that Deponte was denied award of each of these procurements," and that "[t]hese lost opportunities have had a significant and material impact on the business and business reputation of Deponte." Compl. ¶ 13.

## ANALYSIS

Subject matter jurisdiction is a threshold matter which must be addressed before the Court reaches the merits of the plaintiff's claims. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the case."). Where the Court's jurisdiction is challenged, the nonmoving party "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army and Air Force Exchange Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). If a motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional facts alleged in the complaint, this Court may consider relevant evidence to resolve disputed facts. *Reynolds,* 846 F.2d at 747; *accord Thomson v. Gaskill,* 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942). In deciding a RCFC 12(b) motion to dismiss, the Court construes plaintiffs' allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). If the Court finds jurisdiction lacking as a matter of law, dismissal is required. *Ex Parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868); *Thoen v. United States,* 765 F.2d 1110, 1116 (Fed.Cir.1985).

The Tucker Act confers jurisdiction on the Court to entertain a claim against the United States founded upon an express or implied contract. 28 U.S.C. § 1491(a)(1) (1988). The Tucker Act does not create a substantive right enforceable against the United States for money damages. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Mitchell,* 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) (claimant must demonstrate that the source of substantive law relied on mandates compensation for damages). The Contract Disputes Act (CDA), 41 U.S.C. § 602(a) (1994), provides the substantive basis for a money damage claim arising from an express contract with the United States. Pursuant to the Tucker Act, the Court has authority to render judgment upon "any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978, ... and other non-monetary disputes on which a deci-

sion of the contracting officer has been issued under section 6 of the Act." 28 U.S.C. § 1491(a)(2). The CDA applies to "any express or implied contract entered into by an executive agency." 41 U.S.C. § 602(a).

■ The Court's jurisdiction under the CDA is predicated on the contractor's fulfillment of two fundamental requirements: the submission of a written claim to the contracting officer, § 605(a), and the agency's issuance of a final decision, § 609(a)(3). *See Rex Sys., Inc. v. Cohen,* 224 F.3d 1367, 1372 (Fed.Cir.2000). Absent a final decision from the contracting officer, the Court of Federal Claims lacks jurisdiction over a claim for compensation when a contract is subject to the CDA. *See Overall Roofing & Construction Inc. v. United States,* 929 F.2d 687, 689 (Fed.Cir.1991); *Sharman v. United States,* 2 F.3d 1564 (Fed.Cir.1993). A contracting officer's decision cannot confer jurisdiction upon the court where no claim has been properly submitted, because the contracting officer does not possess the authority to waive the jurisdictional requirements established by Congress. *W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1338 (Fed.Cir.1983).

■ The Federal Acquisition Regulation (FAR) defines a monetary claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain." 48 C.F.R. 2.101 (2002); *see Reflectone, Inc. v. Dalton,* 60 F.3d 1572, 1576 (Fed. Cir.1995). No particular language is required to state a claim under the CDA, as long as the contractor submits to the contracting officer, a "clear and unequivocal statement" providing adequate notice of the basis and amount of the claim. *Contract Cleaning Maintenance, Inc., v. United States,* 811 F.2d 586, 592 (Fed.Cir.1987); *Davies Precision Machining, Inc., v. United States,* 35 Fed.Cl. 651, 663 (1996); *Cubic Corp. v. United States,* 20 Cl.Ct. 610, 616 (1990).

■ Plaintiff has failed to establish that these jurisdictional requirements have been satisfied with respect to its claim for money damages. Plaintiff does not contend that it filed a claim for money damages with the contracting officer prior to or after the issuance of a final decision on the lease termination. Rather, relying primarily on Federal Circuit precedent related to *non*-CDA disputes, plaintiff argues as a matter of law that the final decision on the lease termination for default is an adequate jurisdictional substitute for a CDA claim and final decision on money damages.

Plaintiff's argument that the Tucker Act provides independent jurisdiction over the money damage claim based on the final decision of termination is insupportable. The Federal Circuit has made it abundantly clear that a termination decision does not constitute a final decision on a money damage claim under the CDA for jurisdictional purposes. In *Sharman,* the Federal Circuit held that the CFC lacked jurisdiction over both the government's and the contractor's claim to unliquidated progress payments following a termination for default because there had been no final decision of the contracting officer regarding the claims for progress payments prior to the filing of the suit. As the Court noted, "the default claim and demand for return of unliquidated progress payments are separate and distinct ... for jurisdictional purposes." *Id.* at 1570. Similarly, the Federal Circuit held that "the Claims Court will only entertain suits on claims, and those claims are limited to demands for money presently due and owing. A default termination is not such a claim." *Overall Roofing & Construction,* 929 F.2d at 689.

The cases plaintiff relies upon to establish this Court's jurisdiction over the money damage claim are readily distinguishable. *Daff v. United States,* 78 F.3d 1566 (Fed.Cir.1996), the major Federal Circuit case on which plaintiff relies involving a CDA dispute, does not support the proposition that the Tucker Act suffices to establish jurisdiction over a money damage claim that arises from a default termination absent satisfaction of the CDA's preconditions. The contracting officer in *Daff* had issued a final decision on the default termination and a second decision seeking return of unliquidated progress payments resulting from the termination. Rejecting the plaintiff-appellant's contention

that the CFC lacked jurisdiction over both claims because the termination decision was invalid, the Federal Circuit stated that "[b]ecause the [CFC] had jurisdiction to hear [the plaintiff's] challenge to the termination for default, it had jurisdiction to adjudicate the government's counterclaims." *Id.* at 1573. The remaining cases cited by plaintiff are not applicable because they involved contracts not covered by the Contract Disputes Act, and therefore not subject to its jurisdictional prerequisites.[1]

The contracting officer's final decision in this case makes no reference to a claim for money presently due because no such claim was ever submitted. The contracting officer's decision to terminate the contract for default is a government claim against the contractor, not a contractor claim against the government. *Malone v. United States,* 849 F.2d 1441, 1443, *modified on reh'g,* 857 F.2d 787 (Fed.Cir.1988); *Lisbon Contractors, Inc. v. United States,* 828 F.2d 759, 764–65 (Fed. Cir.1987); *Z.A.N. Co. v. United States,* 6 Cl.Ct. 298, 305–06 (1984). The government acknowledges that the Court has jurisdiction to decide a challenge to the contracting officer's termination for default. However, it argues correctly that a decision to terminate a contract for default is separate and distinct from a decision on any claims by a contractor for termination costs or damages. Absent a claim and final decision, the court lacks jurisdiction to decide a money damages claim.

The Court must either exercise jurisdiction over or dismiss the monetary claim. The Court does not have the option to grant a stay to allow the plaintiff to cure the jurisdictional defect by filing a certified claim with the contracting officer so that the plaintiff may obtain a final decision and amend the complaint. Once a claim is in litigation, the Department of Justice has the exclusive authority to act in the pending litigation, 28

U.S.C. §§ 516–20 (1988), thereby divesting the contracting officer of his authority to issue a final decision on the claim. *Sharman,* 2 F.3d at 1571.

## CONCLUSION

For the reasons discussed above, defendant's motion for partial dismissal is **GRANTED.** Pursuant to RCFC 54(b), as there is no just reason for delay, the Clerk of the Court is directed to enter judgment on plaintiff's claim for money damages and dismiss it without prejudice.

As discussed at oral argument, the Court will proceed with a determination on the issue of liability. Toward that end, the parties shall submit a proposed discovery and briefing schedule on the remaining issues by October 15, 2002.

**IT IS SO ORDERED.**

---

1. For example, *MPE Business Forms, Inc. v. United States,* 44 Fed.Cl. 421 (1999), involved a contract dispute between the Government Printing Office (GPO) and a printer that was not subject to the CDA because the GPO is not an executive agency. *Massie v. United States,* 40 Fed.Cl. 151, 166 (1997), *rev'd and remanded,* 166 F.3d 1184 (Fed.Cir.1999), involved a personal injury settlement agreement, which the Court found was "not a procurement or disposal of property contract, such as those contemplated by the CDA." In *Peter v. United States,* 6 Cl.Ct. 768 (1984), the implied-in-fact contract at issue established a fiduciary relationship between the United States and a Pacific Islander community. The Court noted that "[w]here a contract establishes a fiduciary relationship, the absence of a separate statutory basis that would mandate compensation for breach of fiduciary obligations does not deprive the court of jurisdiction over the breach claim." *Id.* at 777.